Nicholas JOHNSON; a minor by Julie JOHNSON, the natural mother and Guardian Ad Litem, Plaintiff–Appellant,

v.

SPECIAL EDUCATION HEARING OFFICE, STATE OF CALIFORNIA; Clovis Unified School District; Walter L. Buster, individually REC/DLB and as Superintendent of the Clovis Unified School District; Janet Van Gelder, individually and in her official capacity as the Director of Special Education for the Clovis Unified School District, Defendants–Appellees.

No. 01–16274.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 2002.

Filed April 26, 2002.

**1178**

---

Shelli J. Lewis, Law Office of Shelli J. Lewis, Corona, CA, for the plaintiff-appellant.

Don Gonzales, Law Office of Shelli J. Lewis, Corona, CA, for the plaintiff-appellant.

Gregory J. Rolen, Miller, Brown & Dannis, San Francisco, CA, for the defendants-appellees.

Before GOODWIN, NOONAN, and TROTT, Circuit Judges.

## OPINION

PER CURIAM.

### OVERVIEW

Nicholas Johnson ("Nicholas"), by and through his mother, Julie Johnson, appeals the district court's denial of a preliminary injunction sought by them to modify the "stay put" order entered by the California Special Education Hearing Office ("Hearing Office"). Nicholas argues that under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400–91 ("IDEA"), a request for a preliminary injunction to maintain the educational status quo of a disabled child must be automatically granted, and therefore the district court's consideration of the traditional preliminary injunction factors was error. Because we find that the district court used the appropriate legal standard, we affirm.

### BACKGROUND

Nicholas is an autistic child eligible for educational assistance under IDEA. IDEA creates a substantive right to education. Its main purpose is to provide disabled children with "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). IDEA accomplishes this goal by funding state and local agencies that comply with its goals and procedures. *Id.* § 1412.

For each child covered by IDEA, an education program team, consisting of the child's parents, teachers and representatives from the responsible education agency, crafts an annual Individual Education Program ("IEP"). The IEP addresses: 1) the child's goals and objectives, 2) the educational services to be provided, and 3) an objective method of evaluating the child's progress. *Id.* §§ 1401(11), 1414(d). However, when a child is under three years old, an Individualized Family Service Plan ("IFSP") is created instead of an IEP. The IFSP focuses on the infant's developmental needs, as well as requirements of the child's family.

Before Nicholas turned three, he received services pursuant to his IFSP from the Central Valley Regional Center ("Regional Center"). The Regional Center contracted with Central Valley Autism Project ("Autism Project") to provide thirty-five hours per week of individualized therapy and ten hours per week of supervision. By law, the Regional Center was responsible for Nicholas's educational needs until Nicholas was three-years old. 20 U.S.C. §§ 1431–1445.

When Nicholas celebrated his third birthday on November 11, 2000, his education became the responsibility of Clovis Unified School District ("Clovis"). Clovis met with Nicholas's parents in an effort to create an IEP, as required by IDEA, but they were unable to agree on a suitable plan. On November 6, 2000, Clovis proposed an interim educational placement utilizing the same goals and objectives as Nicholas's IFSP, including a thirty-five hour per week discrete trial training home program like that implemented by the Autism Project under his IFSP. In order to provide conformity for Nicholas, Clovis subsequently offered to provide Autism Project tutors for his discrete trial training. Unsatisfied with the proposed interim placement, Nicholas's parents initiated a due process hearing with the Hearing Office. Their goal was to maintain the status quo.

Pursuant to IDEA's protective provisions, Nicholas filed also a separate request for a "stay put" order with the Hearing Office. IDEA states:

> [D]uring the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents otherwise agree, *the child shall remain in the then-current educational placement of such child.*

*Id.* § 1415(j) (emphasis added). Section 1415(j), commonly referred to as the "stay put" provision, requires the educational agency to maintain a disabled child's educational program until any placement dispute between the agency and the child's parents is resolved.[1]

Because he had no IEP, Nicholas contended that the placement contained in his existing IFSP was his "stay put" placement, and therefore, that Clovis was required to provide the *exact* same program and vendors as the Regional Center provided under his IFSP. In response, the Hearing Office's "stay put" order did require Clovis to maintain Nicholas's education placement and services pursuant to his IFSP, although it noted that Clovis "need not utilize the same vendors who provided services under that IFSP." Nicholas was not satisfied with this alteration of his program even though his existing tutors remained the same.

On December 11, 2000, Nicholas filed a complaint in district court seeking a preliminary injunction against, and an order temporarily restraining, the Hearing Office's "stay put" order. Nicholas's proposed injunction required that the Hearing Office issue a new "stay put" order that forced Clovis to use the same tutors, vendors, and supervisory services used by the Regional Center. The district court denied Nicholas's request for a preliminary injunction. Nicholas appeals.

## DISCUSSION

### I Standard of Review

We review a district court's denial of a preliminary injunction for an abuse of discretion. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir.2000). If the district court relied on an erroneous legal standard or committed an error of law, we review the legal questions de novo. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir.1999).

---

1. California has adopted the goals and procedures of IDEA in the California Education Code. California's "stay put" provision reads: "During the pendency of the hearing proceedings, including the actual state level hearing, the pupil shall remain in his or her present placement ... unless the public agency and the parent agree otherwise." Cal. Educ.Code § 56505(d) (2001).

## II The District Court Applied the Correct Preliminary Injunction Standard

Nicholas argues that the "stay put" provision of IDEA requires the district court to ignore what the Hearing Office did and issue a no-questions-asked, "automatic injunction" against *any* change in his placement. Thus, Nicholas maintains that the district court erred by requiring him to show irreparable harm and a likelihood of success on the merits. It is important to note, however that Nicholas sought injunctive relief in district court *after* the "stay put" order was filed by the Hearing Office. He sought to challenge and to dissolve an existing "stay put" order and to compel the Hearing Office to issue a substitute order modifying its "then current educational placement" finding by mandating rote compliance with *every* aspect of Nicholas's IFSP. The district court was not asked to grant an original "stay put" order pursuant to § 1415(j). Instead, the district court was asked to enjoin the Hearing Office's preexisting "stay put" order.

Therefore, Nicholas's injunction request in district court asking for another order to his liking was not entitled to automatic replication of the status quo because the "stay put" order accomplishing that purpose had already been granted by the Hearing Office. Instead, as with most injunctions, the district court was required to examine the validity of the existing "stay put" order and to balance the equities.

Though Nicholas looks to our Sister Circuits for support, the cases he cites, given the procedural posture of this case, are inapplicable. Although the cases on which he relies contain strong "automatic injunction" language, each deals with a district court's original grant or denial of a "stay put" order or "stay put" injunction. No case cited deals with appellate review of a district court's refusal to enjoin a *preexisting* "stay put" order. *See Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir.1982)(stating that § 1425(j) "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships"); *see also Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir.1996) (quoting *Zvi D.* and adopting the reasoning of the Second Circuit); *Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook County v. Illinois State Bd. of Educ.*, 103 F.3d 545, 550 (7th Cir.1996) (holding that use of the preliminary injunction equitable factors would "dilute the statutory framework" under the "stay put" provision).

■ We hold that a request to enjoin a preexisting "stay put" order is handled appropriately by the district court's application of traditional preliminary injunction analysis. To enjoin a "stay put" order, a litigant must demonstrate either "(1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in [his] favor." *Prudential Real Estate*, 204 F.3d at 874. Thus, the district court applied the correct preliminary injunction standard in this case.

## III The Likelihood of Success on the Merits and the Irreparable Harm to Nicholas Were Correctly Analyzed.

■ For the purpose of § 1415(j)'s "stay put" provision, the current educational placement is typically the placement described in the child's most recently implemented IEP. *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990). The parties agree that Nicholas's IFSP constitutes his current educational

placement for "stay put" purposes, however, they dispute whether IDEA requires a previously non-responsible agency, such as Clovis, to provide the exact same vendors and supervisors to a disabled child who transitions between educational agencies. *See* Cal. Educ.Code § 56032. While Nicholas argues that a "stay put" placement order must give him exactly what he was receiving under his IFSP, including the same vendors, Clovis argues persuasively that it can meet the requirements of the "stay put" provision by providing comparable educational placement.

In light of the shift in educational agencies, the Hearing Office analogized Clovis's responsibilities to Nicholas to an agency's responsibilities to an incoming transfer student as dictated by California law.

> Whenever a pupil transfers into a school district from a school district not operating programs under the same local plan in which he or she was last enrolled in a special education program, the administrator of a local program under this part shall ensure that the pupil is immediately provided an interim placement for a period not to exceed 30 days. The interim placement must be *in conformity with an individualized education program.*

Cal. Educ.Code § 56325 (emphasis added). The Hearing Office reasoned that "[w]hen responsibility transfers from one public education agency to another, the new public agency is required only to provide a program that is in conformity with the placement in the last agreed upon IEP or IFSP." The new agency need not, and probably could not, provide the exact same educational program. The district court found this reasoning persuasive and thus, found no likelihood that Nicholas could successfully change his "stay put" order.

Nicholas contends he would be successful at trial in challenging the stay put order because the transfer code section used by analogy by the Hearing Office only applies to students moving long distances, students whose IEPs and IFSPs cannot be replicated. Therefore, Nicholas maintains, the district court's analogy to the transfer statute is inapposite because he did not move. We disagree. The analogy made by the Hearing Office and adopted by the district court has been used in previous special education hearing decisions to interpret the "stay put" provision's application to a three-year-old child's transition between educational agencies. *See Student v. San Gabriel Valley Unified Sch. Dist.*, SN 648–00 (May 2, 2000); *Student v. Centralia Elementary Sch. Dist. & Greater Anaheim SELPA*, SN 1769–99 (Dec. 21, 1999); *Student v. Manhattan Beach Unified Sch. Dist.*, SN 1506–99 (Oct. 18, 1999) (analogizing a three-year-old child's transition between educational agencies to a transfer student's transition between districts, and finding a change in providers presumptively necessary for both children). We, too, find it a useful comparison.

■ The purpose of the "stay put" provision is to strip schools of the "unilateral authority they had traditionally employed to exclude disabled students … from school" and to protect children from any retaliatory action by the agency. *Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see also Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 918 n. 8 (1st Cir.1983). Similarly, the transfer provision minimizes the disturbance and turmoil in a student's education caused by a transfer. Both statutes require placements that provide stability in education.

As the special education decisions acknowledge, when Nicholas turns three years old, responsibility for his education shifts from the Regional Center to Clovis, and the status quo necessarily changes.

By requiring Clovis to provide an interim placement "in conformity with" Nicholas's IFSP, the Hearing Office maintained the stability of Nicholas's educational program as contemplated by the "stay put" provision, while taking into account the reality of a shift in responsible educational agencies.

Nicholas argues also that California's definition of placement supports his claim to future success in changing the "stay put" order. However, we note that California's definition of placement does not preclude the modification to Nicholas's educational vendors. In California "[s]pecific educational placement means that unique combination of facilities, personnel, location or equipment necessary to provide instructional services to an individual with exceptional needs." Cal. Admin. Code tit. 5, § 3042(a). The definition of educational placement is not an exact one, rather it is a combination of different factors listed in the disjunctive. Here, the Hearing Office's "stay put" order preserves the tutors, goals, and plan Nicholas used in his IFSP; it only changes the plan supervisors. As the district court pointed out, Clovis's personnel are highly qualified to supervise Nicholas's program. Thus the "stay put" order correctly determined Nicholas's "then current educational placement" and Nicholas has very little likelihood of success in challenging the "stay put" order. In addition, because Clovis offered comparable placement to Nicholas, no irreparable harm would befall Nicholas by denying the preliminary injunction.

 Finally, Nicholas contends that the Hearing Office's application of the California transfer provision cannot be valid because the transfer provision conflicts with the federal "stay put" provision, and therefore, it is preempted by the federal statute. Federal law preempts state law "to the extent that it actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Volt Info. Sci., Inc. v. Bd. of Trs.*, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581, (1941)). We disagree with Nicholas's premise. The Hearing Office did not apply the California transfer provision to Nicholas's situation. Instead, the Hearing Office used the transfer provision as an analogy to assist in its § 1415(j) analysis of the "then-current educational placement" of a student that must transition between educational agencies. There is no conflict here.

## CONCLUSION

The district court applied the correct analysis when it decided to deny Nicholas's request for a preliminary injunction. Neither the Hearing Office nor the district court erred in analogizing Nicholas's situation to that of a transfer student. The district court conducted an independent review of the record to determine irreparable harm and the likelihood of success on the merits, and the district court did not abuse its discretion in denying the preliminary injunction. Thus, we affirm its decision.

AFFIRMED.