POSNER, Circuit Judge.
This appeal by an .Illinois school district presents .a novel issue concerning the scope of the “stay put” provision of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(j). The Act requires states such as Illinois that accept federal funding for the education of disabled children to provide them with a “free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living.” 20 U.S.C. § 1400(d)(1)(A); see id., § 1412(a); 34 C.F.R. § 104.33(a); Alex R. ex rel. Beth R. v. Forrestville Valley Community Unit School Dist. # 221, 375 F.3d 603, 611 (7th Cir.2004); Missouri Dept. of Elementary & Secondary Education v. Springfield R-12 School Dist., 358 F.3d 992, 998-99 (8th Cir.2004). The particulars of the child’s program are required to be set forth in an “Individualized Education Program” devised by school officials in collaboration with the, child’s parents. 20. U.S.C. § 1414(d). Hearing officers resolve disputes regarding the IEP or its implementation. § 1415(f).
*510 Casey K. was a student in the eighth grade of the St. Anne Elementary School, a public school in St. Anne, Illinois. He was and is severely dyslexic. His parents thought that the school could not provide him with the educational services to which the IDEA entitled him, and after enrolling him in a “therapeutic” private school, the Acacia Academy, sought a hearing pursuant to the IDEA to prove their contention and make the school district pay for the cost of the private school. The parties settled their dispute on March 4, 2004, agreeing that Casey could remain in the Acacia Academy at the expense of the school district until May 12, at which time, under Illinois law, having reached the age of 15 he would become the responsibility of the St. Anne Community High School District No. 302. 105 ILCS 5/14-6.01; Board of Education of Community Unit School Dist. No. 428 v. Board of Education, 288 Ill.App.3d 382, 223 Ill.Dec. 717, 680 N.E.2d 450, 452 (1997). For although the elementary school and the high school are only three blocks apart, they are each their own, separate school districts (the elementary school is the St. Anne Elementary School District No. 256), and thus each is a distinct “legal entity,” with its own school board. 105 ILCS 5/10-10; see Mueller ex rel. Math v. Community Consolidated School Dist. 54, 287 Ill.App.3d 337, 222 Ill.Dec. 788, 678 N.E.2d 660, 665 (1997); Board of Education v. Regional Board of School Trustees, 121 Ill.App.3d 848, 77 Ill.Dec. 241, 460 N.E.2d 100, 105 (1984); People ex rel. Smail v. Board of Education, 343 Ill.App. 362, 99 N.E.2d 385, 387-88 (1951).
Under the settlement agreement, the IEP that the elementary school district had devised for Casey was to expire when he became the responsibility of the high school district. May 12, Casey’s fifteenth birthday, arrived, and a few days later the high school district issued an IEP for him, as it was authorized by state law to do because it was a different district from the district of the school from which he was transferring. 23 Ill. Admin. Code § 226.50(h)(1). The new IEP did not authorize Casey’s continued enrollment in the Acacia Academy at the school district’s expense. The parents challenged this determination and sought a hearing, as they had before, at which they demanded that until the challenge was resolved, Casey must be allowed to remain in the Acacia Academy at the high school district’s expense, pursuant to the stay-put provision. That provision states that while proceedings to enforce rights under the Act are pending, “the child shall remain in [his or her] then-current educational placement” at the expense of whatever public entity issued the IEP that is being challenged. 20 U.S.C. § 1415(3); 105 ILCS 5/14-8.02a(l); Beth B. v. Van Clay, 282 F.3d 493, 496 (7th Cir.2002); Mackey ex rel. Thomas M. v. Board of Education, 386 F.3d 158, 160-61 (2d Cir.2004); AW ex rel. Wilson v. Fairfax County School Board, 372 F.3d 674, 679 (4th Cir.2004). In this case it is the high school district.
It is an, open question whether, even if the parents lose their challenge, they must reimburse the public entity for the expense of the private-school placement to which the child, it turns out, was not entitled. St. Tammany Parish School Board v. Louisiana, 142 F.3d 776, 788-89 (5th Cir.1998). The Act doesn’t say; doubtless the draftsmen had in mind that the stay-put provision would be invoked to keep the child in his current public school (the preferred placement, as we’ll see) rather than in a private school, although there is no doubt that the state must pay for the private school if the state’s own schools don’t have a program to which the Act entitles a disabled child, and a private school does. 20 U.S.C. *511 §§ 1412(a)(10)(B)(i), (C)(ii); School Committee v. Department of Education, 471 U.S. 359, 369-70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); Loren F. ex rel. Fisher v. Atlanta Independent School System, 349 F.3d 1309, 1312 (11th Cir.2003). The argument for giving the parents a free ride is that otherwise they might be timid about trying to enforce their statutory right to a free private education in an appropriate case. The educational services required by the Individuals with Disabilities Education Act are often very costly — and when provided by a public school, far beyond the means of the average public school parent. The risk of an adverse decision by a hearing officer that would require reimbursement of the private school’s charges would deter many parents from enrolling their child in a private school unless they were certain of their right to do so.
The stay-put provision has been interpreted as imposing an automatic statutory injunction, Honig v. Doe, 484 U.S. 305, 326-27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); Rodiriecus L. v. Waukegan School Dist. No. 60, 90 F.3d 249, 253 (7th Cir.1996); John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 556 (3d Cir.2003), like the automatic stay in bankruptcy. The effect of this interpretation is to make violation of the stay-put provision punishable by contempt, but it is also, as we shall see, to enable the district judge to exercise equitable discretion with respect to the duration of the stay. The district judge refused to lift the injunction (as we may call the stay), precipitating this appeal by the high school district. The district argues that if the automatic stay requires a school district other than the one responsible for the child’s current placement to pay for the continuation of that placement while the parents are challenging the district’s IEP, “receiving districts [will] be required to fund private school placements all over the state and country for as long as the parents contin-úen challenging the placement decisions of the new school district” (emphasis added).
The district concedes that if both the elementary school and the high school were in the same school district, Casey would be entitled to “stay put” in Acacia Academy, the placement designated in the elementary school’s IEP for him. Otherwise eighth graders wouldn’t enjoy the protection' of the stay-put provision at all, or tenth graders in a junior high school that ends in tenth grade even if, when they left elementary school for junior high school, or junior high school for (senior) high school, they remained in the same building. It’s not as if the break between eighth and ninth grade,' or between tenth and eleventh grade, is so much sharper than any other grade break as to make temporary continuation of the previous educational placement inappropriate. .
We cannot see what difference it makes if a state decides that the elementary school and the high school serving .the same pool of kids shall be deemed to constitute separate school districts. Whatever motivates such .decisions (probably they are relics of a time when kids were required to attend school only through the eighth grade) has nothing to do with the purpose behind the stay-put provision. We are told that Illinois once had 950 school districts; were it to reinstate that number, the effects on the stay-put provision would be profound. We cannot see why such a decision should affect the rights created by a federal statute, or why Congress would have countenanced a state’s diminishing those.rights simply by designating every public school a separate school • district. IDEA is a program of financial assistance to states conditioned on *512 the states’ complying with certain requirements of the Act, such as paying for the private education of disabled children in some instances. From the Act’s standpoint the state is an indivisible unit. It must not be allowed to crawl out from under the Act’s requirements — while retaining the federal money that it gets in exchange for submitting itself to those requirements — by multiplying the number of its school districts. It would make no sense if, simply by dividing all its school districts in half, and thus doubling their number, a state could reduce the expense to it of compliance with the conditions in IDEA without surrendering a penny of IDEA funds.
It is entirely understandable that the St. Anne high school should not want to fund the elementary school’s settlement with Casey’s parents, which is, in effect, what the stay-put provision is compelling it to do. The settlement was attractive to the elementary school because it required the school to pay for only nine weeks of Casey’s stay at the Acacia Academy. It is arguable that before Casey should be allowed to remain in a private school at public expense, either the high school or a hearing officer should decide whether the public school can provide adequate services to the child. Expense is not the only issue; placing a child in a school for disabled children runs counter to the policy of the IDEA of “mainstreaming” disabled children to the “maximum extent appropriate.” 20 U.S.C. § 1412(a)(5)(A); see Honig v. Doe, supra, 484 U.S. at 311, 108 S.Ct. 592; Board of Education v. Rowley, 458 U.S. 176, 202-03, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The “removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.” Id. (emphasis added). The placement decision must be made in conformity with this statutory “least restrictive environment” requirement and must ensure that “the child is educated in the school that he or she would attend if nondisabled” unless the child’s educational program “requires some other arrangement.” 34 C.F.R. §§ 300.552(a)(2), (c). Sometimes it does require that; but it can be argued that the step was taken too lightly here in what amounted to a litigation settlement between an elementary school that would shortly have no further responsibility for the child and the child’s parents.
That, however, is an issue for another day; it is not argued by the high school district. The district does complain about the settlement, but only because it was not a party to it. It does not argue that a settlement agreement cannot create a current educational placement; quite the contrary, it assumes that the settlement agreement created a valid placement for Casey in the Acacia Academy so long as he was under the jurisdiction of the elementary school district. The high school district’s entire legal argument for reversal, so far as we can discern, pivots on the fact that the state has placed the elementary school and the high school in separate districts. If they constituted a single district, the high school would be a party to the settlement agreement.
We add that as far as expense (as distinct from what is best for the child) is concerned, nothing compels the State of Illinois to allow the elementary school to shift the cost of Casey’s continued stay at the Academy to the high school district. The state can allocate financial responsibilities among school districts as it pleases, so far as the IDEA is concerned. Each state has plenary authority over its public schools and can make appropriate arrangements for cost sharing across district lines *513 if a child transfers to another district and his parents challenge the new district’s Individual Educational Placement. There is no collision between state and federal interests.
The question presented by the state’s curious districting is novel, as we said, and the only previous case the parties or we have been able to find that might seem to bear directly on it is Johnson ex rel. Johnson v. Special Education Hearing Office, 287 F.3d 1176 (9th Cir.2002) (per curiam). The school district reads the Johnson opinion hopefully to mean .that when a child moves across district lines the stay-put provision no longer requires that the child receive exactly the services he was previously getting. For the court in Johnson said that a disabled child is only entitled to a “comparable educational placement.” But the “comparable” placement in that case involved the identical curriculum and the identical tutors and thus, as the court emphasized, was functionally identical to the child’s prior placement, while the allegedly “comparable” placement that our district proposes would take Casey out of his private school and into a public school' with completely different teachers, curriculum, and classmates. It was thus only in the most technical sense that by allowing the new district to call the tune the court in Johnson was dissolving the automatic injunction — and the court certainly nowhere said or suggested that it thought the injunction had automatically lapsed just because the child had left the district. See also Ms. S. ex rel. G. v. Vashon Island School Dist., 337 F.3d 1115, 1133-34 (9th Cir.2003). There is some questionable language in Johnson that could be read to suggest that the automatic injunction isn’t really automatic — it is— though what is true is that the automatic injunction can be dissolved for a compelling reason. Id. at 1180; see also Honig v. Doe, supra, 484 U.S. at 325-28, 108 S.Ct. 592; Board of Education of Oak Park & River Forest High School Dist. 200 v. Illinois State Board of Education, 79 F.3d 654, 660 (7th Cir.1996); Light v. Parkway C-2 School Dist., 41 F.3d 1223, 1227-28 (8th Cir.1994). But the fact that the old school and the new, though only blocks apart, are separated by a district line is not a good reason, let alone a compelling one, and no other has been offered.
The district warns us that if we affirm, Casey’s parents will be able to move him to Alaska and force the public school district in which they settle to pay for Casey’s continued enrollment in the Acacia Academy while they challenge whatever IEP the Alaska district devises for the child. There is no way in which Alaska could limit the largesse of an Illinois elementary school, which might agree to a very generous settlement indeed if it thought the child about to move to another state. But here is where the courts’ treatment of the stay-put provision as an injunction has bite. If the schools were in different states (perhaps even if they were in different areas of the same state, though that we needn’t try to decide), and if as a result the refusal to lift the automatic injunction would impose an unreasonable burden on the transferee school, the district court could exercise its equitable discretion to modify or dissolve the injunction. That is not the case here.
AFFIRMED.