# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 8, 2015                    Decided May 26, 2015

No. 14-7086

LATONYA BOOSE,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00305)

*Douglas W. Tyrka* argued the cause and filed the briefs for appellant. *Nicholas Ostrem* entered an appearance.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: ROGERS, TATEL, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this case arising under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, plaintiff seeks an order requiring the District of Columbia Public Schools to provide her son with compensatory education to make up for the period during which the school system, allegedly in violation of the statute, failed to identify and evaluate him. The school system responded with an individualized education plan that is, by all accounts, adequate to keep the child on track going forward, and the district court dismissed the suit as moot. But because the district court failed to address whether A.G. was entitled to compensatory education—a remedy that remains available—we reverse.

## I.

The Individuals with Disabilities Education Act aims to ensure that every child has a meaningful opportunity to benefit from public education. To serve that goal, the statute requires that public school systems provide all resident children with disabilities a "free appropriate public education," or FAPE. *Id.* § 1412(a)(1)(A). It also requires that school systems promptly "identif[y], locate[], and evaluate[]" every "child[] with disabilities residing in the [district] . . . who [is] in need of special education and related services"—a requirement known as "child find." 20 U.S.C. § 1412(a)(3)(A). Once such a child is identified, located, and evaluated, the school system must develop an "individualized education plan," or IEP, for the child. *Id.* §§ 1412(a)(4), 1414(d).

If a school district fails to satisfy its "child-find" duty or to offer the student an appropriate IEP, and if that failure affects the child's education, then the district has necessarily denied the student a free appropriate public education. *See Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (a FAPE denial is actionable if it

"affect[s] the student's substantive rights") (emphasis omitted). And when a school district denies a child a FAPE, the courts have "broad discretion" to fashion an appropriate remedy. *See Florence County School District Four v. Carter*, 510 U.S. 7, 15–16 (1993). That equitable authority, this court has held, must include the power to order "compensatory education"—that is, education services designed to make up for past deficiencies in a child's program. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522–23 (D.C. Cir. 2005). If compensatory education were unavailable, after all, a child's access to appropriate education could depend on his parents' ability to pull him out of the deficient public program and front the cost of private instruction—a result "manifestly incompatible with IDEA's purpose of 'ensur[ing] that *all* children with disabilities have available to them a free appropriate public education.'" *Id.* at 522–23 (quoting 20 U.S.C. § 1400(d)(1)(A)); *see also School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts*, 471 U.S. 359 (1985) (compelling reimbursement for private instruction to avoid the same harm). Worse yet, "students who remained in public school [without an appropriate plan] would lack any effective redress for FAPE denials, even those extending over many years." *Reid*, 410 F.3d at 523. To be sure, such students could seek a satisfactory IEP. But because the Supreme Court has held that IEPs need do no more than provide "some educational benefit" going forward, *Board of Education of the Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 200 (1982), an education plan conforming to that standard will speak only to "the child's present abilities," *Reid*, 401 F.3d at 523. Unlike compensatory education, therefore, an IEP "carries no guarantee of undoing damage done by prior violations," *id.*, and that plan alone cannot take the place of adequate compensatory education.

Latonya Boose, the plaintiff in this case, seeks compensatory education for her son, A.G. Now nine years old and about to enter the fourth grade, A.G. exhibited behavioral problems during the first few months of kindergarten at Kimball Elementary School—the kinds of things that may signal attention and hyperactivity disorders. Although his performance improved enough for him to advance with his class, issues arose again at the beginning of his first-grade year. Responding to those difficulties, A.G.'s teacher evaluated him for attention-deficit disorder, attention-deficit hyperactivity disorder, and anxiety. Before anything came of that evaluation, Boose filed an administrative complaint alleging that DCPS had failed "to identify, locate, and evaluate" A.G., who, it should have known, was "a student with a suspected disability." That is, Boose alleged that DCPS had violated its "child-find" obligations. A Hearing Officer denied the claim, finding that A.G. had had the benefit of a FAPE during kindergarten and the beginning of first grade. As evidence, the Hearing Officer noted that although A.G. had fallen behind at the beginning of both academic years, his performance and behavior had improved to the point that he was keeping up with his class. Hearing Officer Determination 5–7.

That decision, however, addressed only DCPS's liability for failing to identify and evaluate A.G.—that is, the Hearing Officer determined that the school system had not denied A.G. a FAPE *up to that point*. Because it was still possible that A.G. needed special education *going forward*, Boose formally asked DCPS to evaluate the child to determine whether he needed such services. After three months in which DCPS failed to act, Boose asked the district court to step in, challenging both the Hearing Officer's retrospective compensatory-education ruling and the school system's failure to offer a prospective IEP. *See* Compl. 7.

Before the court could issue a decision, DCPS completed the comprehensive evaluation Boose had asked for. As a result of that evaluation, school officials determined that A.G. was in fact eligible for special education going forward, and they developed an IEP for him. But as DCPS concedes, that IEP included no education to compensate for the period—kindergarten through the first few weeks of first grade—during which A.G. allegedly lacked an appropriate education plan. *See Boose v. District of Columbia*, 44 F. Supp. 3d 10, 12 (D.D.C. 2014).

Although the IEP was no doubt helpful, and Boose has never challenged its adequacy, she believed that DCPS still owed A.G. compensatory education, so she continued to pursue her lawsuit. As it stands, then, this case is about A.G.'s right to compensatory education, a remedy he has yet to receive. Although Boose continued to pursue compensatory education for A.G. even after school officials evaluated him, DCPS urged the district court to dismiss the case as moot. According to DCPS, Boose seeks redress for alleged violations of the child-find provision of IDEA and, if it were granted, "such redress . . . would consist of an order requiring DCPS to evaluate A.G. in order to determine his eligibility for special education and other related services." *Id.* at 13. That evaluation, of course, had already happened by the time the court took up Boose's case, and, in fact, DCPS had found that A.G. *is* entitled to special education. So, the argument goes, Boose has already gotten everything she asked for. In these circumstances, DCPS argued, even a victory could offer Boose no redress. In the alternative, DCPS moved for summary judgment, asking the district court to decide the case in the school system's favor on the merits. The district court, however, agreed with DCPS's mootness argument and dismissed the case. *Id.*

In defending the district court's order, DCPS begins by mischaracterizing the remedy Boose seeks. Specifically, it argues that Boose asked only for an evaluation, not for compensatory education itself. Because school officials completed that evaluation—and, DCPS says, made a reasoned determination that no compensatory education was necessary—that request is moot. But in the very next clause of her complaint, Boose makes her intention clear: she asks the court to order DCPS to "*devise a compensatory education plan* to compensate A.G. for [DCPS's] failures." Compl. 8. This request clearly seeks compensatory education, not just a determination as to whether such compensation is appropriate.

DCPS, moreover, conflates the compensatory education Boose seeks with the evaluation and IEP it offered. Specifically, it argues that the evaluation and the IEP satisfied Boose's request for compensatory education. But that cannot be. As noted above, and as DCPS concedes, the IEP included no compensatory education. IEPs are forward looking and intended to "conform[] to . . . [a] standard that looks to the child's present abilities," whereas compensatory education is meant to "make up for prior deficiencies." *Reid*, 401 F.3d at 522–23. Unlike compensatory education, therefore, an IEP "carries no guarantee of undoing damage done by prior violations," *Reid*, 401 F.3d at 523, and that plan alone cannot do compensatory education's job. So the mere fact that DCPS offered A.G. an IEP cannot render moot Boose's request for compensatory education.

In the end, then, this case is indistinguishable from our decision in *Lesesne v. District of Columbia*. There, we held that where the plaintiff's "complaint contains an explicit demand for compensatory education" and where it did "not appear that the parties' [settlement] addresse[d] [the plaintiff's] demand," the "complaint presented the District Court with a live controversy." 447 F.3d 828, 833 (D.C. Cir.

2006) (emphasis omitted). So too here. Because Boose expressly requested compensatory education, and because DCPS has never offered it, "the complaint present[s us] with a live controversy," and Boose's case is not moot.

DCPS offers just one response to this commonsense conclusion. Boose's claim can be moot, the school system argues, even if "the district court *could theoretically* provide her [the] relief" she seeks, Appellee's Br. 17, if that relief is "too speculative," *id.* 12–14. The relief is speculative, DCPS seems to be suggesting, because either it or the district court might ultimately determine that no compensatory education is warranted. In support, DCPS points out that "the record evidence here shows that [A.G.] was promoted to the first grade," that he "showed academic and behavioral progress," and that "there is no evidence that . . . a compensatory education service is necessary to address [any educational] deficit." *Id.* 13–14. But this argument misunderstands the relationship between mootness and the merits. A court does not lack jurisdiction merely because the complaint may fail to state a claim, and "[w]hether the complaint states a cause of action on which relief could be granted . . . must be decided after and not before the court has assumed jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). In other words, at this stage of the litigation, we must assume that Boose has stated a valid legal claim, i.e., that she would prevail on the merits. *See Information Handling Services v. Defense Automated Printing Services*, 338 F.3d 1024, 1029 (D.C. Cir. 2003). Given this, it is obvious that this case is far from moot. If Boose were to prevail on the merits, the district court could either order the school system to determine the appropriate amount of compensatory education or make that determination itself. In other words, the district court has the authority to grant Boose the compensatory education she asks for—a question it should have addressed on the merits.

## II.

In the alternative, DCPS asks *us* to reach the merits and hold that A.G. is not entitled to compensatory education. But because the district court never considered that question, we think it far better to reverse and remand for the district court to consider it in the first instance. *See, e.g.*, *U.S. ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 44 (D.C. Cir. 2014) (remanding for consideration of the merits because the district court had erroneously dismissed the case on jurisdictional grounds). Indeed, we have expedited the preparation and issuance of this opinion because the new school year begins in a few months and we want to be sure that DCPS and the district court have as much time as possible to consider A.G.'s eligibility for compensatory education.

*So ordered.*