UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.G.,

       Plaintiff,

    v.

DISTRICT OF COLUMBIA,

      Defendant.

Civil Action No. 15-2239
KBJ/DAR

## REPORT AND RECOMMENDATION

Plaintiff M.G. commenced this action for injunctive and declaratory relief pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, seeking judicial review of a final decision of the District of Columbia Office of the State Superintendent of Education with respect to K.H., her minor child, a student who suffers from major depression, an anxiety disorder, ADHD and related disabilities, and a math disorder. *See* Complaint for Injunctive & Declaratory Relief (ECF No. 1) at 1–4.

In the complaint, Plaintiff claims that (1) the District of Columbia Public Schools ("DCPS") denied K.H. a free appropriate public education ("FAPE"); (2) DCPS failed to propose and provide an appropriate school placement for K.H.; and (3) DCPS failed to develop an appropriate individualized education program ("IEP") for K.H. *Id.* at 1. As relief, Plaintiff seeks a judgment declaring that DCPS violated the IDEA; an order for DCPS to reimburse Plaintiff for all costs of K.H.'s education from August 6, 2015, plus $355; an order for DCPS to modify K.H.'s IEP to prescribe full-time specialized instruction in a general education environment; and an order for

DCPS to pay reasonable attorney fees and costs incurred in bringing and pursuing the instant action. *Id.*

This case was referred to the undersigned United States Magistrate Judge for full case management. *See* 12/30/2015 Minute Order. The parties filed dispositive motions in accordance with the undersigned's scheduling order. *See* 03/14/2016 Minute Order; Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 7); Defendant's Opposition to Plaintiff's Motion for Summary Judgment & Cross Motion for Summary Judgment ("Defendant's Motion") (ECF No. 10). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, and the entire administrative record, the undersigned will recommend that Plaintiff's motion be granted in part, and that Defendant's motion be denied.

## I.     BACKGROUND

### A.     *Factual Background*

K.H. is a sixteen-year-old student who is currently enrolled at Emerson Preparatory School ("Emerson") and resides in the District of Columbia. Administrative Record ("AR") (ECF No. 6) at 40, 235. K.H. "has been diagnosed with anxiety, depression, emotional dysregulation, ADHD, a math disability, an executive functioning disability, and possibly PTSD." AR at 229. In October 2014, K.H. entered Stansbury Academy ("Stansbury") and continued attending that school until August 5, 2015. AR at 108, 190.

On February 20, 2015, Plaintiff filed a Due Process Complaint against DCPS in the District of Columbia Office of the State Superintendent of Education. AR at 40. The Hearing Officer issued a Hearing Officer Determination ("HOD") on April 29, 2015, concluding that DCPS violated the IDEA by failing to conduct initial evaluations of K.H.'s eligibility for special education services within the required 120-day period. AR at 50–51. The HOD required DCPS,

within thirty days of the order, to convene an eligibility team to determine K.H.'s eligibility for special education and related services, and if the team found K.H. to be eligible, convene an IEP team to develop an IEP and educational placement for K.H. AR at 58. The HOD also required DCPS to, upon receipt of documentation of payment by Plaintiff, reimburse Plaintiff the cost of tuition and related expenses for K.H.'s attendance at Stansbury from February 19, 2015 until the last day of the DCPS 2014–2015 regular school year, or the day on which DCPS offered K.H. a suitable educational placement, whichever came first. *Id.* On May 20, 2015, DCPS convened an eligibility meeting and found that K.H. was eligible for special education services. AR at 378.

On August 4, 2015, DCPS sent Plaintiff a draft IEP. AR at 68. With no educational placement made by the start of the 2015 school year, Plaintiff enrolled K.H. at Emerson, a non-public, general education school. On September 8, 2015, Plaintiff filed another Due Process Complaint, alleging that DCPS failed to propose or provide an appropriate placement, develop an appropriate IEP, and fully reimburse Plaintiff the cost of K.H.'s enrollment at Stansbury. AR at 107–09. DCPS filed a response to the Complaint on September 11, 2015. AR at 162.

### B. *Summary of Hearing Officer Determination*

On November 22, 2015, the Hearing Officer issued a HOD, wherein he concluded that Plaintiff was entitled only to reimbursement for K.H.'s tuition and expenses at Stansbury for the summer of 2015—but not reimbursement for the tuition at Emerson for the 2015–2016 school year. AR at 22. Specifically, the Hearing Officer made the following summary findings:

> DCPS was not justified in recommending twenty five hours of specialized instruction outside general education for the 2015-2016 school year. DCPS denied [K.H.] educational benefit by failing to consider whether [K.H.] could benefit from at least some regular education academic classes with appropriate supplemental aids and services. DCPS accordingly denied [K.H.] a FAPE for the 2015-2016 school year.

*Id.* at 15.

* * *

> DCPS denied [K.H.] educational benefit, and therefore a FAPE, by failing to have an IEP or a placement for [K.H.] for the summer, 2015. [Moreover,] DCPS denied [K.H.] educational benefit, and therefore a FAPE, by failing to have an IEP in effect by the start of the 2015-2016 school year.

*Id.* at 17.

* * *

> There is nothing in the record to suggest that [K.H.] receives the behavioral support services that are mandated by [K.H.'s] IEP. . . . [T]he record does not establish that these accommodations are specially designed for [K.H.] at Emerson. . . . At the hearing, [Plaintiff] did not present any "ten day notice" to DCPS alerting them that she had decided to place [K.H.] at [Emerson]. . . . [The Hearing Officer was] constrained by the applicable law and regulations, which require a denial of [Plaintiff's] claim for tuition payment at [Emerson] for the 2015-2016 school year.

*Id.* at 20–21.

## II.    CONTENTIONS OF THE PARTIES

Plaintiff requests that Defendant: (1) reimburse Plaintiff for all costs of K.H.'s education at Emerson for the 2015–2016 school year; (2) reimburse Plaintiff for the remaining $355 of K.H.'s education at Stansbury; (3) place K.H. at Emerson; and (4) fund K.H.'s ongoing Emerson tuition. *See generally* Plaintiff's Motion. Plaintiff alleges that DCPS, in its IEP, inappropriately placed K.H. in an environment completely apart from non-disabled students, despite the IDEA's requirement that children with disabilities be placed in the "least restrictive environment." Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Mem.") (ECF No. 7) at 12. Plaintiff argues that DCPS did not offer any school placement for the 2015–2016 school year despite the IDEA's requirement for an appropriate school placement. *Id.* Plaintiff further avers that Emerson is appropriate for K.H. because Emerson meets "the specific academic

goals and objectives" in DCPS's IEP. *Id.* at 14. Plaintiff argues that the Hearing Officer's finding that Plaintiff violated the notice requirement was in error, because the requirement is only applicable in a case involving "removal of [a] child from [a] public school." *Id.* at 20. Lastly, Plaintiff contends that she is entitled to reimbursement of $355, and that this issue was overlooked by the Hearing Officer. *Id.* at 22.

Defendant counters that Plaintiff is not entitled to tuition reimbursement for Emerson because K.H. does not receive any special education service at Emerson and because Plaintiff did not provide notice of her intent to enroll K.H. in a private school at public expense. Memorandum of Points and Authorities in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and Cross Motion for Summary Judgment ("Defendant's Mem.") (ECF No. 10) at 14, 19. Moreover, Defendant argues that Plaintiff acted unreasonably by thwarting DCPS's attempt to convene an IEP meeting and finalize the IEP, and by concealing her decision to place K.H. at Emerson. *Id.* at 21. Lastly, Defendant avers that Plaintiff failed to provide any documentation that shows that DCPS owes Plaintiff the $355 at issue. *Id.* at 21–22.[1]

## III. STATUTORY FRAMEWORK

The IDEA was enacted to "ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); 34 C.F.R. § 300.300; *see also Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). This court has held that "DCPS has a fundamental

---

[1] Defendant has offered to reimburse the requested amount upon Plaintiff's submission of documentation that shows the outstanding $355 was related to the costs of K.H. attending Stansbury. *Id.* at 22.

obligation to provide FAPE to a child with a disability residing in the District of Columbia." *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 84 (D.D.C. 2014).

The IDEA requires "[a]t the beginning of each school year, each local educational agency . . . have in effect, for each child with a disability in [its] jurisdiction, an individualized education program[.]" 20 U.S.C. § 1414(d)(2)(A). The IDEA also requires that children with disabilities be placed in the "least restrictive environment" so that they are "educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from regular education environment occurs when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. 1412(a)(5)(A). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991)).

A parent or guardian who unilaterally places a child with a disability in a private school, without consent of the school system, does so at his or her own risk. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *School Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985)). The IDEA "requires school districts to reimburse parents for their private-school expenses if (1) school officials failed to offer the child a [FAPE] in a public or private school; (2) the private-school placement chosen by the parents was otherwise proper under the [IDEA]; and (3) the equities weigh in favor of reimbursement[.]" *Leggett v. District of Columbia*, 793 F.3d 59, 66–67 (D.C. Cir. 2015) (citing *Florence Cty. Sch. Dist. Four v. Carter by and Through Carter*, 510 U.S. 7, 15–16 (1993); 20 U.S.C. § 1412(a)(1)(C)(iii)(III)) (internal quotation marks omitted). A FAPE is unavailable to the child

when the child's IEP is inadequate or when the school district failed to develop an IEP for the child. *Id.* at 63.

## IV.   APPLICABLE STANDARD OF REVIEW

The IDEA provides a statutory right to a civil action in state or federal court for "any party aggrieved by the findings and decisions" of a hearing officer.  20 U.S.C. § 1415(i)(2)(A). Under the IDEA, "the [reviewing] court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c).   The IDEA gives the court "broad discretion" to fashion an appropriate remedy to provide a FAPE.  *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993); *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015).

In a civil action challenging a hearing officer's decision under the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the court may receive." *D.R. v. Gov't of D.C.*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).   Where neither party submits additional evidence for the court's review, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997); *accord Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012).

The District of Columbia Circuit has explained that, "given the district court's authority to hear additional evidence . . . and base its decision on the preponderance of the evidence, 20 U.S.C. §§ 1415(i)(2)(B)(ii), (iii), the IDEA plainly suggests less deference than is conventional in administrative proceedings." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884,

887 (D.C. Cir. 1989)) (internal quotation marks omitted).  Courts must afford "due weight" to the state administrative proceedings and avoid "substitut[ing] their own notions of sound educational policy for those of the school authorities they review."  *Bd. of Educ. Hendrick Hudson Cent. Sch. Distr. v. Rowley*, 458 U.S. 176, 206 (1982).  However, "a hearing decision without reasoned and specific findings deserves little deference."  *Reid*, 401 F.3d at 521 (quoting *Kerkam*, 931 F.2d at 87) (internal quotation marks omitted); *see also M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 40 (D.D.C. 2013) ("[W]hile a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings.").

Moreover, "[a] court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate" and the court "may not simply rely on the Hearing Officer's exercise of discretion."  *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (internal quotation marks and citations omitted).  The party challenging the hearing officer's decision "take[s] on the burden of persuading the court that the hearing officer was wrong."  *Id.* at 35 (internal quotation marks omitted); *accord Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (finding that the burden of proof in an administrative hearing concerning an IEP is upon the party seeking relief); *see also* D.C. Mun. Regs. tit. 5-E, § 3030.3.

## V.    DISCUSSION

### A.    *K.H.'s Placement in Emerson was Appropriate Because the Placement was Reasonably Calculated to Enable K.H. to Receive Educational Benefits*

The Hearing Officer found that Emerson was not an appropriate placement for K.H. because it did not provide K.H. with many of the elements of special education services identified in K.H.'s IEP.  AR at 20.  The Hearing Officer found that K.H. "has attended no special education classes at [Emerson], and has received no instruction from any special education teacher at

[Emerson]." AR at 20. The Hearing Officer also found that K.H. does not receive counseling, behavioral support services, or "redirection, verbal reinforcements, repetition of directions, and verbal prompts and reminders" as outlined in the IEP. AR at 20.

The IDEA ensures all children with disabilities receive a FAPE by providing special education and related services. 20 U.S.C. § 1400(d)(1)(A). This Circuit has noted that "[s]pecial education, in turn, means, simply, instruction specially designed . . . to meet the unique needs of a child with a disability." *Leggett*, 793 F.3d at 63 (quoting 20 U.S.C. § 1401(29)) (internal quotation marks omitted). While unilateral private school placements are allowable in the absence of an appropriate IEP, such placements must be "proper under the Act"—meaning that "the education provided by the private school is reasonably calculated to enable the child to receive educational benefits." *Id.* at 70 (citing *Carter By and Through Carter v. Florence County School District Four*, 950 F.2d 156, 163 (4th Cir. 1991), *aff'd*, 510 U.S. 7 (1993)). If a child shows improvement of performance, the placement can well be considered "primarily oriented toward enabling [the child] to obtain an education[.]" *Id.* at 72; *see also Roark ex rel. Roark v. Dist. of Columbia*, 460 F. Supp. 2d 32, 44 (D.D.C. 2006) ("Academic success is an important factor 'in determining whether an IEP is reasonably calculated to provide education benefits.'").

In this case, the Hearing Officer found that DCPS denied K.H. a FAPE by failing to propose an appropriate IEP, and Defendant does not contest the Hearing Officer's finding that there was no appropriate IEP in effect for K.H. by the start of the 2015–2016 school year. AR at 15; Defendant's Mem. at 15. Defendant does contest, however, Plaintiff's claim that Emerson is an appropriate placement for K.H. by arguing that Emerson does not provide the services required by K.H.'s IEP, such as "25 hours per week of specialized instruction outside the general education setting, . . . redirection, behavioral reinforcements, . . . and other behavioral supports[.]"

Defendant's Reply to Plaintiff's Opposition to Defendant's Cross Motion for Summary Judgment

("Defendant's Reply") (ECF No. 14) at 3 (citing Defendant's Mem. at 15). In further support,

Defendant cites *Berger* and *Schoenbach*, two cases where courts held that the private school

placements selected by parents were inappropriate because they did not provide the special

education services required by the students' IEPs. *See Berger v. Medina City School Dist.*, 348

F.3d 513, 522–23 (6th Cir. 2003); *Schoenbach v. District of Columbia*, No. 05-1591, 2006 WL

1663426, at *22–23 (D.C.C. June 12, 2006). These two cases are distinguished from the instant

case, however, because both involved a student with a valid IEP who was removed from a current

placement in favor of a private school which did not meet any of the student's needs as identified

on the IEP.[2] In *Berger*, the court found that the unilateral private placement was not proper under

the IDEA because the private school did not provide any special education services in which the

public school was deficient. *See* 348 F.3d at 523. Likewise, in *Schoenbach*, the public school was

capable of providing the special services identified in the IEP and the private school did not provide

any special service in which the public school was deficient. *See* 2006 WL 1663426 at *23.

Because these two cases involve IEPs that the courts found provided FAPEs for the students, the

plaintiffs in both cases would have failed to satisfy the first prong of *Leggett*'s three-part test for

reimbursement. *See Leggett*, 793 F.3d at 66–67. In the present case, however, Defendant failed

to provide a FAPE for K.H. and therefore Plaintiff has satisfied the first prong of *Leggett* for

reimbursement of a unilateral private school placement.

The issue next becomes whether Emerson was an otherwise proper placement for K.H.

under the IDEA. In the HOD, the Hearing Officer found that Emerson was not proper because it

---

[2] As discussed in greater detail in Part V.B below, there is an additional contrast between the instant case and *Berger* and *Schoenbach*—namely that K.H. did not have a valid placement at the time Plaintiff enrolled K.H. at Emerson. AR at 16.

did not provide any special education. AR at 20. In *Leggett*, because there was no appropriate IEP for the student by the start of the school year, the court assessed the appropriateness of the private school placement based on the student's unique needs identified by the student's psychologist. *See Leggett*, 793 F.3d at 72. Here, too, an appropriate IEP was not available because, according to the HOD, it was prepared without an appropriate IEP meeting and was sent to Plaintiff three days prior to the start of the school year. AR at 15–17. While the August 2015 IEP included a placement—*i.e.* 25 hours per week of specialized instruction outside the general education setting—a location of services was not identified. *See* Defendant's Mem. at 20; AR at 97–98. Indeed, the Hearing Officer noted that no location was provided, and that "DCPS did not even send a preliminary information packet to the proposed placement . . . until after the school year had started." AR at 16.

K.H.'s unique needs include "a small, quiet, supportive environment that can simultaneously work to remediate [K.H.'s] weakness in math and allow [K.H.] access to an accelerated, college preparatory program in other subjects where [K.H.] excels." AR at 84. K.H. needed to enhance both anxiety and peer interaction skills. AR at 94, 229, 241. Plaintiff also identified full-time mainstreaming to be necessary for K.H. through consultation with K.H.'s therapist. AR at 241–42. With respect to mainstreaming in the general education setting, the Hearing Officer found that the IEP lacked any discussion of possible supports for K.H. in a general education setting and required an inappropriate amount of instruction outside the general education setting. AR at 14.

The Hearing Officer cited *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir. 2006) as a useful comparison, when discussing whether Emerson provided special education services. AR at 20. In so doing, the Hearing Officer attempted to distinguish *Frank G.* from the instant case by

pointing out that there was a clear record of the "specially designed" accommodations for the student in *Frank G*, which met the student's unique needs. *Id.* The Hearing Officer held, however, that accommodations such as small class sizes and a quiet environment offered by Emerson benefit all students. AR at 20. These benefits are not "specially designed to meet the unique needs of a child with a disability," and therefore do not qualify as special education. AR at 20. In *Frank G.*, the court recognized the small class size as "one element of the special education services[,]" while acknowledging that it alone might not render the placement appropriate. *See Frank G.*, 459 F.3d at 365. While an accommodation such as small class size could be available to all students, the court reasoned that it could address the deficiencies in other schools that lacked such an accommodation for a child with a disability. *See id.* The undersigned notes that courts in this District have previously recognized small class size as a valid accommodation for a FAPE. *See e.g.*, *District of Columbia v. Bryant-James*, 675 F. Supp. 2d 115, 120 (D.D.C. 2009) (finding the IEP to be inadequate because it did not consider the requirement of small class size that the doctor addressed as the child's chief concern); *Gellert, et al. v. District of Columbia Public Schls.*, 435 F. Supp. 2d 18, 25 (D.D.C. 2006) (finding that the private school was an appropriate placement because the small class size and a quiet environment enabled the student to receive educational benefits). So long as these modifications or accommodations are "reasonably calculated to enable the child to receive educational benefit," the undersigned is compelled to find that they are valid forms of special education under the IDEA.

Plaintiff argues that the accommodations at Emerson were reasonably calculated to enable K.H. to receive educational benefits. Plaintiff's Mem. at 13–15. Plaintiff points to the fact that K.H. earned good grades and made friends at Emerson, despite a history of social and emotional issues. *Id.* at 13–14. Additionally, Plaintiff notes that Emerson meets many of the needs identified

by the IEP, including a small and quiet environment, and an accelerated college preparatory program for K.H.'s stronger subject areas. *Id.* at 14. Defendant does not dispute the fact that K.H. appeared to benefit from enrollment at Emerson, but rather contends that Emerson "is not a special education school and *cannot* provide K.H. with 25 hours of special education instruction outside the general education classroom—the services required by [K.H.'s] August 2015 IEP." [3] Defendant's Mem. at 16–17. Additionally, Defendant argues that Emerson failed to provide the "individual support for [K.H.'s] weaknesses and slow graph motor speed or provide[] redirection, behavioral reinforcements, repetition of directions, verbal prompts and reminders and other behavioral supports—items that were deemed necessary for K.H.'s educational development and which were included on [K.H.'s] IEP." Defendant's Reply at 3 (internal quotation marks omitted).

Even if Defendant is correct that Emerson failed to provide these supports, the undersigned finds that Emerson was still reasonably calculated to enable K.H. to receive educational benefits. As outlined above, Emerson did provide some supports that benefitted K.H. This Circuit has held that when evaluating a unilateral private placement for appropriateness, the court is to employ the same standard used in evaluating the education offered by a public school district. *Leggett*, 793 F.3d at 70. Such a standard requires that a private school "need not guarantee the best possible education or even a 'potential-maximizing' one." *Id.* (citing *Rowley*, 458 U.S. at 197 n.21). All that is required is that the private school be "reasonably calculated to enable the child to receive educational benefits." *Id.* Defendant's argument that Emerson is inappropriate because it does not address *all* of K.H.'s needs seeks to impose a higher standard than that articulated in *Leggett*.

---

[3] While it may be true that Emerson does not provide the identified services "outside the general education classroom" as noted by Defendant, the undersigned recognizes that this was one of the express provisions which caused the Hearing Officer to hold that the IEP was inappropriate for K.H. AR at 15.

Finally, the undersigned finds that, as in *Leggett*, there was no other appropriate option available to Plaintiff when she enrolled K.H. at Emerson. An *appropriate* IEP was not complete when the 2015–2016 school year started and no arguable alternative school placement was provided until well after the school year had already begun. *See* AR at 16–17.[4] Plaintiff was left with Emerson as "the only school reasonably calculated to offer educational benefit" to K.H. *See Leggett*, 793 F.3d at 74. For all these reasons, the undersigned finds that Emerson was "oriented toward enabling [K.H.] to obtain an education," and therefore a proper placement under the IDEA. *See Leggett*, 793 F.3d at 72.

### B.    *The Equities Favor Reimbursement*

When a child's parent or guardian selects a unilateral private school placement and the court finds that the school was "reasonably calculated to enable the child to receive educational benefits," the court can still deny reimbursement if equitable considerations so require. *Leggett*, 793 F.3d at 70. The Hearing Officer found that the equities favored a denial of reimbursement because Plaintiff did not comply with a "ten day notice" requirement under the IDEA. AR at 21. According to *Leggett*, reimbursement may be denied or reduced if the equities weigh against reimbursement—*i.e.* "the parents fail to notify school officials of their intent to withdraw the child, [] deny them a chance to evaluate the student, . . . [or] otherwise act unreasonably[.]" *Leggett*, 793 F.3d at 63, 67 (quoting 20 U.S.C. § 1412(a)(10)(C)(iii)) (internal quotation marks omitted); *see, e.g.*, *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005) ("[C]ourts have

---

[4] The Hearing Officer noted that "DCPS did not even send a preliminary 'information packet' to the proposed placement, [Frost], until after the school year had started. It was only on September 9, 2015 that [Frost] received [K.H.]'s records from DCPS. Thereafter, [Frost] started the process of trying to interview Petitioner and [K.H.]. DCPS presents no authority to suggest that it is permissible to be so later with an educational placement. . . . Here, [K.H.] would have missed several weeks of school were [K.H.] to have gone to [Frost]. I find that, at least for this Student, missing the first few weeks of school was a substantive violation that denied [K.H.] a FAPE." AR at 16–17.

recognized that in setting the award, equity may sometimes require consideration of the parties' conduct[.]"); *Eley v. District of Columbia*, No. 11–309, 2012 WL 3656471, at \*10 (D.D.C. Aug. 24, 2012) ("A court may also reduce or deny tuition reimbursement upon a judicial finding that the actions taken by the parents were unreasonable."); *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000) (denying reimbursement because parents failed to notify public school of private counseling until well after counseling had concluded); *Carmel Central School District v. V.P.*, 373 F. Supp. 2d 402, 409 (S.D.N.Y. 2005) (denying reimbursement because parents provided inaccurate information to the school district for many years and actively concealed the child's disability).

This limitation on reimbursement was "created to give the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a FAPE can be provided by the public schools." *Fisher v. Friendship Pub. Charter Sch.*, No. 10-cv-886, 2012 WL 11916732, at \*7 (D.D.C. Jan. 26, 2012) (quoting *Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 84 (D.D.C. 2004) (internal quotation marks omitted)). When a school district fails to show any substantive harm caused by a parent's violation of the notice provision, a court may not deny reimbursement on the basis of notice alone. *Schoenbach*, 309 F. Supp. 2d at 85 (citing *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811–12 (5th Cir. 2003)) (denying the request for tuition reimbursement because the parents' failure to object to the IEP team's public school placement substantively contributed to the IEP's inappropriateness).

Plaintiff here argues that "the Hearing Officer incorrectly applied the ten-day notice provision in this case," because the requirement only applies a removal of a child from a public school. Plaintiff's Mem. at 19–20; *see also* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa). In support of

this argument, Plaintiff cites several cases, including *Fisher*, where the ten-day notice was not required because the student could not be removed from school as he had already been expelled, *see* 2012 WL 11916732, at \*7, and *Eley*, where the plaintiff did not violate the notice provision because "there was no proposed placement that plaintiff could reject," *see Eley v. District of Columbia*, No. 11–309, 2012 WL 3656471, at \*9 (D.D.C. Aug. 24, 2012).  Defendant argues that the notice requirement applies here because the IEP was finalized before Plaintiff placed K.H. at Emerson and Plaintiff failed to timely notify Defendant.  Defendant's Mem. at 20.

The undersigned finds that the Hearing Officer inappropriately applied the ten-day notice requirement in this case.  The IDEA expressly requires notice for "removal . . . from . . . *school*" or "reject[ion] [of] the *placement*."  20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa) (emphasis added).  As in *Eley*, Plaintiff was under no obligation to provide notice to DCPS because there existed no school placement from which K.H. was to be removed.  *See* 2012 WL 3656471, at \*9 (finding the notice provision inapplicable because "DCPS had not identified a particular school placement, or a location at which R.E.'s IEP would be implemented.").  Defendant does not contest the Hearing Officer's findings, and the Hearing Officer found that DCPS had not provided K.H. with a placement prior to the start of the 2015–2016 school year.  AR at 16 ("While there was an IEP written prior [to] the start of the school year, there was no placement offered to the parent by the first day, which was August 26, 2015.").  Further, by the time Plaintiff enrolled K.H. at Emerson, Defendant was already on notice of K.H.'s need for an IEP and school placement, and the record shows both parties attempted to assemble an IEP team, evaluate the child, and devise an IEP for K.H.  AR at 27–74.  In fact, the record indicates that at a meeting in May of 2015 DCPS was aware that K.H. would be leaving Stansbury and would be in need of a new placement for the 2015–2016

school year.[5]  The undersigned finds that, "even if Plaintiff was required to formally contest a non-existent placement, plaintiff provided DCPS with the requisite notice" through discussion with Defendant.  *See Eley*, 2012 WL 3656471, at \*9.

Defendant further argues against reimbursement by citing "Plaintiff's unreasonable behavior when DCPS was trying to schedule the IEP meeting."  Defendant's Mem. at 20.  The undersigned finds that Plaintiff did not otherwise act unreasonably in the course of its interaction with DCPS.  While Defendant contends that Plaintiff "stonewalled" DCPS's attempts to convene an IEP meeting, the record illustrates that the failure to convene an IEP meeting was attributable to both parties.  *See* AR at 60–74.  While DCPS attempted to convene a meeting with Plaintiff by providing numerous dates, it is also true that DCPS was unable to select among the dates Plaintiff proposed for a meeting.  The failure of scheduling was not due a unilateral "stonewalling" by Plaintiff, but was caused in part by the unavailability of DCPS, Plaintiff, the therapist, or school personnel.

Upon careful review of the record, the undersigned finds no basis to deny or reduce reimbursement for tuition and related expenses at Emerson.

### C.      *Insufficient Evidence Regarding $355 Underpayment Requires Remand*

Plaintiff argues that DCPS owes Plaintiff $355 for expenses at Stansbury for June, 2015.  Plaintiff's Mem. at 22–23.  It is uncontested that DCPS has reimbursed $11,335.20 for the tuition and expenses at Stansbury for June, 2015, and Defendant argues that Plaintiff has produced no documentation to support further reimbursement in the amount of $355.  AR at 121; Defendant's

---

[5] "Q: Right. And [Plaintiff] informed you at the eligibility meeting and just for the hearing officer's benefit this – I believe you testified before that you thought it was it was [sic] May but were not sure exactly when in May?
A: Yes.
Q: And at that meeting [Plaintiff] informed you that the expectation was that [K.H.] would be leaving Stansbury in time for the new school year, correct? In time for the '15-'16 school year?
A: She did."  AR at 431.

Mem. at 21–22.  It is uncontested that the Hearing Officer did not make a specific finding regarding the Plaintiff's allegation of underpayment.  Where, as here, there is no pertinent finding in the HOD and given that both parties filed motions for summary judgment without request for consideration of additional evidence, the district court may determine that the appropriate relief is remand to the Hearing Officer.  *Reid*, 401 F.3d at 526.

Submission of invoices by parents for reimbursement for private placement and payment of such invoices by the District of Columbia are governed by regulations set forth in the District of Columbia Municipal Regulations Title 5-A, Chapter 29.  *See District of Columbia v. Masucci*, 13 F. Supp. 3d 33, 45 (D.C. Cir. 2014) (ordering parents to submit invoices for tuition and related expenses); *Blackman v. District of Columbia*, No. 97-1629, 2013 WL 9600334, at *1 (Jan. 9, 2013) (ordering parents to submit invoices for tuition and transportation to receive payment from school). The Code of D.C. Municipal Regulations requires "[parents] seeking reimbursement for authorized services . . . to submit . . . invoices for special education services," or "receipt of payment established by mutual written agreement of parties."  D.C. Mun. Regs. tit. 5-A, § 2901.1, 2902.2 (2012).

Plaintiff requests that the court award $355 allegedly omitted from the reimbursement for K.H.'s expenses at Stansbury for June, 2015.  Plaintiff's Mem. at 22.  Plaintiff argues that there is no dispute that Plaintiff incurred the $355 expense as part of the reimbursable costs of K.H.'s education at Stansbury.  *Id.* at 23.  The record, however, indicates otherwise.  Plaintiff, in her Due Process Complaint, argued that DCPS reimbursed only "a small fraction of the total cost" at Stansbury and requested reimbursement of "all costs" related to Stansbury.  AR at 107, 109. Accordingly, the Hearing Officer granted "reimbursement for expenses at [Stansbury.]"  AR at 18. The HOD, however, did not discuss the $355 apart from Plaintiff's full entitlement to

reimbursement for the expenses at Stansbury. Moreover, while acknowledging DCPS's duty to reimburse the tuition and related expenses at Stansbury, Defendant has been consistently disputing Plaintiff's contention concerning the $355 in this proceeding. *See* AR at 26–194; Defendant's Mem. at 22–23; Defendant's Reply at 7–9.

The record does not contain any invoice or comparable evidence to demonstrate Plaintiff's entitlement to an additional $355. *See* Plaintiff's Mem. at 22–23; Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Plaintiff's Opp'n") (ECF No. 12) at 13–15. Because neither Plaintiff nor Defendant have produced copies of the invoices originally submitted by Plaintiff for June 2015 services, the record on this matter is incomplete. Therefore, because there is insufficient evidence to make a finding regarding Plaintiff's entitlement to $355, the undersigned will recommend that the court remand this matter to the Hearing Officer for a specific factual determination of whether or not Plaintiff is entitled to $355 based on an alleged underpayment.[6]

## VI.    RECOMMENDATION

For all of the foregoing reasons, the undersigned finds that Plaintiff has met her burden of demonstrating, by a preponderance of evidence, that the record as a whole does not support the HOD. Accordingly, the undersigned finds that Plaintiff is entitled to the tuition and related expenses at Emerson for the 2015–2016 school year. The undersigned also finds that there is insufficient evidence to make a finding regarding the Plaintiff claim to $355 of alleged underpayment. In accordance with the applicable standard of review, the undersigned recommends that the HOD be reversed with regard to the tuition and costs associated with K.H.'s

---

[6] The undersigned further suggests that, due to the relatively small dollar amount of this dispute, the parties would be well advised to attempt to resolve this matter without the additional costs associated with re-litigating the issue at the Hearing Officer level.

education at Emerson, and that the matter be remanded to the Hearing Officer for additional findings with regard to the alleged $355 underpayment, should the parties remain unable to resolve that issue.

It is therefore, this 14th day of February, 2017,

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 7), be **GRANTED IN PART**; it is

**FURTHER RECOMMENDED** that this matter be remanded to the Hearing Officer for findings consistent with this report and recommendation; and it is

**FURTHER RECOMMENDED** that Defendant's Cross Motion for Summary Judgment (ECF No. 10), be **DENIED**.

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge

**Within fourteen days, either party may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each such objection. In the absence of timely objections, further review of issues addressed herein may be deemed waived.**