# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 9, 2018          Decided July 19, 2019

No. 18-7028

VELMA OLU-COLE, PARENT AND NEXT FRIEND OF M.K.,
APPELLANT

v.

E.L. HAYNES PUBLIC CHARTER SCHOOL,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00238)

---

*Stevie Nabors* argued the cause and filed the briefs for appellant.

*Lauren E. Baum* argued the cause and filed the brief for appellee.

Before: ROGERS and MILLETT, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*., creates a powerful statutory presumption in favor of maintaining the

current classroom placement of a student with a disability when the school seeks to change his placement over a parent's objections. 20 U.S.C. § 1415(j). That presumption is commonly known as the "stay put" requirement. When a child with a disability has been suspended from school, stay put heavily favors promptly returning the child to the classroom. *See id.* § 1415(k). As an adjunct to stay put, the statute also entitles students with disabilities to "appropriate" remedies like compensatory education to make up for any academic shortfalls that occur during the time they are kept out of school. *See id.* § 1415(i)(2)(C)(iii); *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). The local educational agency must overcome a heavy evidentiary burden to displace the default rule that the child will stay put.

The district court in this case wrongly denied a stay-put injunction because it placed the burden of proof on the student rather than the local educational agency. And that error has continuing adverse consequences for the student's claim for compensatory education. For those reasons, we reverse and remand for further proceedings consistent with this opinion.

**I**

The Individuals with Disabilities Education Act ("IDEA") offers federal funding to States, the District of Columbia, and other United States territories on the condition that they provide children with disabilities a "free appropriate public education" in the "least restrictive environment." 20 U.S.C. § 1412(a)(1), (a)(5); 34 C.F.R. § 300.114–117; *see generally Fry v. Napoleon Community Sch.*, 137 S. Ct. 743, 748–749 (2017). One of the statute's key goals is to integrate children with and without disabilities "[t]o the maximum extent appropriate." 20 U.S.C. § 1412(a)(5)(A).

The "primary vehicle" for securing an appropriate public education is the child's "individualized education program," which is commonly referred to as an "IEP." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see* 20 U.S.C. § 1414(d). The "IEP Team"—which includes school officials, teachers, and parents—crafts the educational plan aimed at "meet[ing] the child's needs" and "enabl[ing] the child to be involved in and make progress in the general educational curriculum[.]" 20 U.S.C. § 1414 (d)(1)(A)(i)(II)(aa), (d)(1)(B). The statute designates the "local educational agency" as an integral member of the IEP Team. *Id.* § 1414(d)(1)(B)(iv); *id.* § 1401(19) (defining a local educational agency as "a public board of education or other public authority legally constituted * * * for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools"). That local educational agency is responsible for ensuring that the IEP Team both "reviews the child's IEP * * * to determine whether [his or her] annual goals * * * are being achieved[,] and [also] revises the IEP as appropriate to address" a lack of progress, the results of updated evaluations or tests, and any "anticipated needs." *Id.* § 1414(d)(4)(A). Certain public charter schools, including E.L. Haynes Public Charter School ("School"), operate as their own local educational agency for purposes of the IDEA. 34 C.F.R. §§ 300.209, 300.705(a).

It should come as no surprise that parents and school officials sometimes disagree over a child's placement or the details of an IEP. The IDEA provides formal dispute-resolution procedures to address those conflicts. To start, parents or local educational agencies may file a "due process complaint" to challenge the current IEP or its implementation. *See, e.g.*, 20 U.S.C. § 1415(b)(6), (c)(2). That filing triggers a preliminary meeting between the parties, *id.*

§ 1415(f)(1)(B)(i), as well as the option of mediation, *id.* § 1415(e).

Where impasse persists, the case proceeds to an administrative hearing—commonly referred to as a "due process" hearing, 20 U.S.C. § 1415(f)(1)(A)—before a "hearing officer" who is not "involved in the education or care of the child," *id.* § 1415(f)(3)(A). The substantive touchstone for that proceeding is always "whether the child [has] received a free appropriate public education." *Id.* § 1415(f)(3)(E)(i). In the District of Columbia, the Office of the State Superintendent for Education is the entity that administers the due process hearings. *See* D.C. Code Ann. § 38-2572.02.

At the end of that administrative process, any party still aggrieved may bring a civil action in federal district court to challenge the final administrative determination. 20 U.S.C. § 1415(i)(2)(A). Courts may "grant such relief as [they] determine[] is appropriate" under the law. *Id.* § 1415(i)(2)(C)(iii).

Recognizing that this dispute-resolution process can take time, and that parties will continue to disagree in the interim, the IDEA's "stay put" provision strikes the balance heavily in favor of maintaining the educational status quo for students with disabilities until proceedings have concluded. As relevant here, the IDEA mandates:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]

5

20 U.S.C. § 1415(j).   To put it more simply, "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Mackey v. Board of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 161 (2d Cir. 2004) (emphasis omitted) (quoting *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996)).

The purpose of the stay-put command is to "strip schools of the *unilateral* authority they * * * traditionally employed to exclude disabled students * * * from school." *Honig*, 484 U.S. at 323 (emphasis in original) (interpreting predecessor provision codified at 20 U.S.C. § 1415(e)(3) (1988)).   And the Supreme Court has held that stay put applies "particularly [to] emotionally disturbed students[.]"   *Id.*

But the stay-put mandate is not without limits.   The provision carves out an express exception for proceedings "provided [for] in subsection (k)(4)," which governs disciplinary proceedings related to certain forms of student misconduct.   20 U.S.C. § 1415(j); *see id.* § 1415(k)(4). Subsection (k)—titled "Placement in alternative educational setting"—gives schools limited authority to unilaterally suspend students with disabilities for such misconduct.   *See* 20 U.S.C. § 1415(k).   When that happens, the statute authorizes the school to place the student in an "appropriate interim alternative educational setting, another setting, or suspension, for not more than 10 school days (to the extent such alternatives are applied to children without disabilities)."   *Id.* § 1415(k)(1)(B).   That placement decision is to be made on a "case-by-case basis," taking into account each child's "unique circumstances."   *Id.* § 1415(k)(1)(A).

Within the statutorily prescribed ten-day window, the school must determine whether the conduct was a "manifestation of the child's disability." 20 U.S.C. § 1415(k)(1)(E)(ii). If it was, then the default rule is that the child must be returned "to the placement from which [he or she] was removed." *Id.* § 1415(k)(1)(F)(iii); 34 C.F.R. § 300.530(f)(2). If, on the other hand, the misconduct was not tied to the student's disability, then the school can pursue the same disciplinary procedures that "would be applied to children without disabilities[.]" 20 U.S.C. § 1415(k)(1)(C).

Even for disability-related misconduct, the presumption favoring return of the student to school gives way when the misconduct involves weapons, drugs, or—as relevant here— the infliction of "serious bodily injury upon another." 20 U.S.C. § 1415(k)(1)(G); *id.* § 1415(k)(7) (incorporating 18 U.S.C. § 1365(h)(3)'s definition of "serious bodily injury"). In those "special circumstances," the IDEA authorizes the school to "remove [the] student to an interim alternative educational setting for not more than 45 school days." *Id.* § 1415(k)(1)(G).

When misconduct covered by Section 1415(k) occurs, parents may challenge either the "placement [or] manifestation determination[s]" by requesting a due process hearing. 20 U.S.C. § 1415(k)(3)(A). Local educational agencies may do the same if they "believe[] that maintaining the current placement of the child is substantially likely to result in injury to the child or to others[.]" *Id.*; *see id.* § 1415(f)(1)(A) (hearing procedures apply equally to complaints "under subsection (b)(6) or (k)").

Whenever a parent or local educational agency pursues that hearing process, Subsection (k)(4) displaces the general stay-put requirement. 20 U.S.C. § 1415(j). Instead,

> (A) the child shall remain in the interim alternative educational setting pending the decision of the hearing officer or until the expiration of the time period provided for in paragraph (1)(C) [which concerns procedures for misconduct unrelated to a child's disability,] whichever occurs first, unless the parent and the State or local educational agency agree otherwise; and

> (B) the State or local educational agency shall arrange for an expedited hearing, which shall occur within 20 school days of the date the hearing is requested and shall result in a determination within 10 school days after the hearing.

*Id.* § 1415(k)(4).

In other words, the child can be required to remain in the alternative interim setting until either (i) the hearing officer decides the expedited appeal (within thirty days of when the complaint is filed), or (ii) the suspension period that "would [have] be[en] applied to children without disabilities" has lapsed, 20 U.S.C. § 1415(k)(1)(C). For cases that involve misconduct involving weapons, drugs, or the infliction of serious bodily injury, the governing regulations cap the interim placement at the 45-day suspension period. *See* 34 C.F.R. § 300.533 (explaining that "the child must remain in the interim alternative educational setting pending the decision of the hearing officer or until the expiration of the time period specified in § 300.530(c) *or (g)*, whichever occurs first")

(emphasis added); 34 C.F.R. § 300.530(g) (permitting schools to "remove a student to an interim alternative educational setting for not more than 45 days" if the child "[h]as inflicted serious bodily injury upon another person while at school"). Upon the request of a local educational agency, the hearing officer has the limited authority to extend the interim placement by "not more than 45 school days if [she] determines that maintaining the current placement * * * is substantially likely to result in injury to the child or to others."  20 U.S.C. § 1415(k)(3)(B)(ii)(II).

## II

M.K. is a high-school student with a significant emotional disability that qualifies him for a specialized education and related services under the IDEA.  On November 6, 2017, M.K. assaulted another student at the School, knocking him to the ground and punching him in the head repeatedly.  That student suffered a concussion.  The School determined that the behavior was "a manifestation of [M.K.'s] disability," 20 U.S.C. § 1415(k)(1)(E), but still chose to suspend him for the statutory maximum of 45 days, pursuant to § 1415(k)(1)(G). During the suspension, M.K. received educational services in an isolated setting.

On December 4, the School informed M.K.'s mother, Velma Olu-Cole, that it would seek a recommendation from the District of Columbia's Office of the State Superintendent for Education regarding whether M.K should be permanently transferred to a different school.  On January 11, 2018, the Superintendent declined to recommend transfer.

On January 17, the School informed Olu-Cole that it would initiate a due process hearing to determine whether a permanent change in placement would be appropriate.  The

School sought Olu-Cole's consent to extend M.K.'s interim placement during the hearing process, but she refused. Olu-Cole explained that M.K. had previously been receiving more than 98 percent of his instruction in a general educational setting, and she worried he would struggle further if subjected to continued education "in isolation" from his peers. J.A. 40.

On January 24, M.K. attempted to return to the School, but he was refused readmission. The next day, the School requested a due process hearing on whether (i) M.K. should be transferred to a non-public, special-education day school; and (ii) his interim placement could continue until that process was completed, *see* 20 U.S.C. § 1415(k)(3)(B)(ii)(II). That hearing was scheduled for February 26, 2018, with a decision expected in early March, *see generally id.* § 1415(k)(4)(B).

Meanwhile, on January 31, 2018, M.K.'s suspension reached the IDEA's 45-day cap. The next day, Olu-Cole filed a complaint and motions for a temporary restraining order and a preliminary injunction to compel M.K.'s reinstatement under the stay-put provision.[1] Her complaint asked the court to declare a violation of stay put, to order the School to readmit M.K., and to grant emergency injunctive and declaratory relief. The memoranda in support of those motions also asked for an accompanying award of "compensatory education for any violations of stay put." J.A. 31, 49.

The district court denied a temporary restraining order on

---

[1] Olu-Cole sought to compel M.K.'s reinstatement under Section 1415(j) and 34 C.F.R. § 300.518, but those provisions are inapplicable because the School sought M.K.'s continued exclusion pursuant to Section 1415(k)(3). In any event, the district court correctly applied the operative provisions in Section 1415(k) and 34 C.F.R. § 300.533. *See Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 292 F. Supp. 3d 413, 418 (D.D.C. 2019).

February 2, and denied a preliminary injunction on February 23. *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 292 F. Supp. 3d 413, 421 (D.D.C. 2019). In its opinion denying the preliminary injunction, the court found that Olu-Cole was likely to succeed on the merits because she had met the established two-part test for stay put by showing that (i) proceedings under the IDEA were "pending," and (ii) the School sought a change in M.K.'s "then-current educational placement." *Id.* at 417–419. The district court nonetheless denied the motion because the hearing officer was expected to rule in two weeks, and Olu-Cole had not demonstrated that M.K. was likely to suffer irreparable harm from extending the suspension until the officer ruled. *Id.* at 420. The district court also accepted the School's argument that M.K.'s return to school "would raise an unacceptably significant potential of injury to other interested parties." *Id.* Given the "significant public interest in maintaining school safety[,]" the district court denied the motion. *Id.*

As it turns out, the School failed to keep the district court up to date on changes in its position. The day before the court issued its decision, the School filed with the hearing officer a motion to withdraw its administrative due process complaint and notified Olu-Cole that it was ready to discuss M.K.'s readmission. Unapprised of the School's change of heart, the district court denied M.K.'s entitlement to stay put because of "school safety." *Olu-Cole*, 292 F. Supp. 3d at 420.

Olu-Cole appealed the next business day. Within two days, the School readmitted M.K., and the hearing officer dismissed the School's administrative complaint with prejudice.

**III**

Ordinarily, the party seeking a preliminary injunction must make a "clear showing" that she is likely to succeed on the merits; she will suffer irreparable harm in the absence of preliminary relief; the "balance of equities" tips in her favor; and an injunction would serve the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *accord Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).

The IDEA's stay-put provision turns that traditional framework on its head. Section 1415(j) effectively provides for an automatic statutory injunction upon a two-factor showing that (i) an administrative due process proceeding is "pend[ing]," and (ii) the local educational agency is attempting to alter the student's "then-current educational placement." 20 U.S.C. § 1415(j); *see Casey K. ex rel. Norman K. v. Saint Anne Community High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (Posner, J.) (comparing stay-put injunction to an automatic stay in a bankruptcy case); *Wagner v. Board of Educ. of Montgomery Cty.*, 335 F.3d 297, 301 (4th Cir. 2003) ("automatic" injunction); *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003) (same); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (stay put "functions, in essence as an automatic preliminary injunction"); *Light v. Parkway C-2 Sch. Dist.*, 41 F.3d 1223, 1227 (8th Cir. 1994) (same).

Because the IDEA deems the exclusion from appropriate public education itself to be a significant harm, once those two statutory factors are established, the student need not otherwise "show[] irreparable harm." *Andersen ex rel. Andersen v. District of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir. 1989) (discussing predecessor statute); *accord Casey K.*, 400 F.3d at 511.

The Supreme Court has said, though, that stay put does not completely displace the "equitable powers of district courts such that they cannot, in appropriate cases, temporarily enjoin a dangerous disabled child from attending school[,]" and that courts may tailor the order to provide "appropriate" relief. *Honig*, 484 U.S. at 327 (discussing 20 U.S.C. § 1415(i)(2)(C)(iii)'s identically worded antecedent). Instead, stay put "effectively creates a presumption in favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* at 328. That means it is the school, and not the parent, that must invoke the court's equitable power to jam the "automatic" statutory trigger for injunctive relief. And so it is the school, and not the parent, that bears the heavy burden of securing preliminary relief. *See id.*; *Winter*, 555 U.S. at 22.

To be sure, as a formal matter, Olu-Cole, rather than the School, was the one that filed a motion for preliminary injunctive relief in this case. But, as *Honig* held, the IDEA made the grant of that injunction virtually automatic once Olu-Cole made the two-factor showing that a due process hearing was pending and that the School sought to undo an existing placement. After that, "school officials [could not] escape the presumptive effect of the stay-put provision simply by violating it and forcing parents to petition for relief." *Honig*, 484 U.S. at 328 n.10. Instead, even though the parents are the ones "seeking injunctive relief for a violation of [Section] 1415[(j)], the burden rests with the school district to demonstrate that the educational status quo must be altered." *Id.*

Taking it down to brass tacks, once Olu-Cole's motion for a preliminary injunction demonstrated that the two statutorily

required factors were met, there was a paradigm shift.   Stay put locked in M.K.'s educational status quo, and the party that needed injunctive relief was the School seeking to derail the statute's ordinary operation.   *See Board of Educ. of Community High Sch. Dist. No. 218 v. Illinois State Bd. of Educ.*, 103 F.3d 545, 548–550 (7th Cir. 1996) (motion for a preliminary "injunction was an effort to maintain the status quo, and thus within the purview of the stay-put provision"); *Drinker*, 78 F.3d at 864 (treating preliminary injunction as a vehicle to enforce "automatic" stay-put injunction); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009) ("A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (*e.g.*, irreparable harm) in order to obtain preliminary relief.") (citation omitted); *cf. Wagner*, 335 F.3d at 302; *Light*, 41 F.3d at 1227; *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 917 (1st Cir. 1983).

This has long been the understanding of the district courts in this circuit.   *See, e.g.*, *Z.B. v. District of Columbia*, 292 F. Supp. 3d 300, 304 (D.D.C. 2018); *G.B. v. District of Columbia*, 78 F. Supp. 3d 109, 113 (D.D.C. 2015); *Wimbish v. District of Columbia*, 153 F. Supp. 3d. 4, 10 (D.D.C. 2015); *Eley v. District of Columbia*, 47 F. Supp. 3d 1, 19 (D.D.C. 2014); *D.K. ex rel. Klein v. District of Columbia*, 962 F. Supp. 2d 227, 232 (D.D.C. 2013); *District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 84 (D.D.C. 2012); *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 98 (D.D.C. 2006); *Saleh v. District of Columbia*, 660 F. Supp. 212, 214 (D.D.C. 1987).   And we agree.   That is the framework the district court should have applied in this case.

But it did not.   Olu-Cole is unquestionably correct that the district court erred in putting the burden of proof on her to

prove that M.K. would be irreparably harmed by a denial of the stay-put injunction.

The district court began, as it should have, by asking the narrow merits question whether M.K. had established stay put's two conditions precedent—that is, that due process proceedings were then pending, and that the school was attempting to deviate from M.K.'s "then-current" placement. *Olu-Cole*, 292 F. Supp. 3d at 418–419. The district court found those two conditions satisfied. So far, so good.

At that point, Olu-Cole was presumptively entitled to have M.K. stay put while the School sought an order allowing it to move him to a new location. And the burden shifted to the School to meet the heavy burden of overcoming that presumption. *See Honig*, 484 U.S. at 328; *Wagner*, 335 F.3d at 302; *Drinker*, 78 F.3d at 864; *Brookline Sch.*, 722 F.2d at 917.

That is where the district court veered off the tracks. Instead of requiring the School to shoulder the difficult burden of justifying its continued exclusion of M.K., the district court put the burden on Olu-Cole to show that "M.K. would * * * suffer irreparable harm if the injunction is not granted." *Olu-Cole*, 292 F. Supp. 3d at 420. That was straightforward legal error.

The School does not seriously attempt to defend the district court's erroneous burden shifting. Instead, the School tries to repackage the district court's decision as just making the right findings under the wrong prong. School Br. 38–41. In finding that M.K.'s readmission posed an "unacceptably significant potential of injury to other interested parties," *Olu-Cole*, 292 F. Supp. 3d at 420, the School argues, the district court necessarily would have concluded that the School met its

task of demonstrating irreparable harm from M.K.'s readmission.    School Br. 41.

Not so.    This court has said time and again that the degree of proof required for "irreparable harm" is "high," and that a failure to surmount it provides "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *cf. Nken v. Holder*, 556 U.S. 418, 434 (2009) (irreparable injury and likelihood of success are the two "most critical" showings required to obtain a stay).    The injury "must be both certain and great; it must be actual and not theoretical [and] * * * of such *imminence* that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297   (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)); *Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018) (injury must be "certain," "great" and "actual").

No comparable burden accompanies the public-interest factors upon which the district court principally relied and in which it housed its finding of "potential" harm.   *Olu-Cole*, 292 F. Supp. 3d at 420.    So, in concluding that M.K.'s return "would raise an unacceptably significant *potential* of injury to other interested parties," *id.* (emphasis added), the district court did not find that the harm was "certain," "great" and "actual." *Mattis*, 889 F.3d at 782.

It also must be remembered that the stay-put provision reflects Congress's considered judgment that children with disabilities are substantially harmed by and must be protected against school policies of unilateral disruption and exclusion. *See Honig*, 484 U.S. at 308; *Joshua A.*, 559 F.3d at 1040. That presumably is why the statutory stay-put scheme requires

no additional showing of harm by the individual student. Any judicial decision to override that congressional judgment would be both "extraordinary and drastic," and should be withheld "unless the [school]" carries its heavy burden "*by a clear showing*" of irreparable harm. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)). The district court's inversion—flipping that heavy burden to the parent— "dilute[d] th[at] statutory framework" and the robust procedural protections it extends to children with disabilities. *See Board of Educ. of Community High Sch.*, 103 F.3d at 550.

That erroneous reordering of the burden of proof necessarily constitutes an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996); *accord Wagner*, 335 F.3d at 301.

The problems with the School's position do not stop there. Its insistence that the denial of stay put can be sustained on the ground that readmitting M.K. posed an unacceptably high threat to the safety of the school community stands in glaring tension with its own independent decision to readmit M.K., which was made *prior to* the district court's ruling. Had the court been apprised of this reversal in the School's position, it would seem untenable for it still to have found that M.K.'s readmission was "*substantially* likely to result in injury" to the school community. *See Honig*, 484 U.S. at 328 (emphasis added). The School cannot evade the evidentiary weight of its own real-world behavior just by failing to alert the district court to it.

**IV**

The School separately argues that this appeal is moot as a result of M.K.'s readmission, combined with the dismissal with prejudice of the School's administrative due process complaint. That argument ignores that the wrongful denial of stay put not only delayed M.K.'s return to school, but altered his entitlement to compensatory educational services, a claim that remains live in this case.

Mootness "ensures compliance with Article III's case and controversy requirement by 'limit[ing] federal courts to deciding actual, ongoing controversies.'" *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016) (alteration in original) (quoting *American Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)). A plaintiff's failure to satisfy that Article III prerequisite deprives the federal court of jurisdiction to act in the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

Because this case involves a motion for preliminary equitable relief, Article III requires that the parties retain "a legally cognizable interest in the determination of whether the preliminary injunction was properly denied." *See Animal Legal Def. Fund v. Shalala*, 53 F.3d 363, 366 (D.C. Cir. 1995); *accord Pulphus v. Ayers*, 909 F.3d 1148, 1152 (D.C. Cir. 2018). That is, would reversal either "affect the parties' rights" or "have a more-than-speculative chance of affecting them in the future"? *Aref*, 833 F.3d at 250 (internal quotation marks omitted) (quoting *American Bar Ass'n*, 636 F.3d at 645); *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (Mootness obtains "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (citation omitted).

This case is not moot because M.K. retains a "concrete interest * * * in the outcome of the litigation," and the district

court could still grant "effectual relief." *Chafin*, 568 U.S. at 172. In holding that M.K. was not entitled to a stay-put injunction, the district court's order had the dual effect of both (i) empowering the School to continue excluding M.K. from its educational services, and (ii) limiting M.K.'s claim to compensatory educational relief for the time of that extended exclusion. Compensatory education is "education services designed to make up for past deficiencies in a child's program," *Boose*, 786 F.3d at 1056 (citation omitted), and to return a student to the position he would have been in the absence of an IDEA violation, *B.D. v. District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016).

By holding that M.K. was not entitled to stay put, the district court foreclosed M.K.'s ability to obtain compensatory education for the (post-suspension) period of his exclusion from school. To put it simply, if M.K. was not legally entitled to be in school, his claim that he was entitled to classroom-equivalent compensatory educational services would fail as well because there would be no predicate IDEA violation warranting compensatory education. *See B.D.*, 817 F.3d at 798. That is why Olu-Cole's request for a stay-put injunction sought not just M.K.'s physical reentry into the classroom, but also the attendant eligibility for compensatory services for the period for which he was wrongly excluded. *Cf. M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 229–230 (3d Cir. 2017) (Section 1415(j) "gives rise to two *concomitant rights*" to stay put and to compensatory education) (emphasis added); *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015) ("[W]hen an educational agency has violated the stay-put provision, compensatory education may—and generally should—be awarded to make up for any appreciable difference between the full value of stay-put services owed" and what was actually provided.).

In short, because the injury alleged went beyond the ongoing physical exclusion from school and included the educational consequences of his delayed return, the School's belated decision to readmit M.K. did not fully cure his injury, and the consequences of the denial of stay put continue.

It is true that, even if M.K. were not entitled to return to school after 45 days, Olu-Cole might still win compensatory education for any inadequacies in the alternative educational placement where he remained. But that award would not compensate M.K. for the effects of the School's unlawful *exclusion*. That is because determining what (if any) compensatory education is due is a comparative question. Compensatory education seeks to restore a student to where the IDEA required the student to be and to "undo the * * * affirmative harm" resulting from the particular IDEA violation. *B.D.*, 817 F.3d at 798; *see Boose*, 786 F.3d at 1056. If M.K. was not eligible to return to school, then the sufficiency of his educational services will be measured against the standard for out-of-school education. If he were entitled to stay put, in-school education becomes the comparative baseline. *See* Olu-Cole's Reply Br. 20.

So understood, the denial of a stay-put injunction vitiated the alleged stay-put violation and, along with it, any attendant right to compensatory education to make up for a wrongful exclusion under the IDEA. And because Olu-Cole has identified distinct and concrete consequences that continue to run from the district court's stay-put denial, the case is not mooted just by M.K.'s readmission. *See Chafin*, 568 U.S. at 172; *McBryde v. Committee to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 57 (D.C. Cir. 2001) (no mootness where "injury to reputation is alleged as a secondary effect of an otherwise moot action," if "tangible, concrete effect remain[s] * * *

susceptible to judicial correction") (citation and quotation marks omitted); *cf. Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (case or controversy would exist even after a conviction is set aside if petitioner demonstrates that "concrete disadvantages * * * were [actually] imposed as a matter of law").

Here, M.K.'s compensatory education request is not merely a "collateral consequence" of the underlying stay-put dispute, *Spencer*, 523 U.S. at 8. It is part and parcel of it. Which presumably is why Olu-Cole appended the request for compensatory education to her motion for preliminary injunctive relief. Oral Arg. Tr. at 16 (Olu-Cole's attorney explaining that stay put and compensatory education are "inextricably intertwined"); *see also M.R.*, 868 F.3d at 229–230.[2]

Lastly, the School challenges the predicate assumption that stay put applied at all in this case. In its view, 34 C.F.R. § 300.533—which limits the interim placement to the 45-day period specified in § 300.530(g)—conflicts with the IDEA's

---

[2] On July 8, 2019, the School notified this Court that M.K. has now graduated from high school. That does not affect our mootness analysis because M.K. remains eligible for compensatory education. *See Parents of Student W. v. Puyallup Sch. Dist. No. 3,* 31 F.3d 1489, 1496 (9th Cir. 1994) (reaching the merits of a compensatory education award for student who graduated from high school); *Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 189 (1st Cir. 1993) ("[A] student who was deprived of services to which he was entitled under the IDEA has a right to a remedy, in the form of compensatory education, regardless of his eligibility for current or future services under the Act."); *Brett v. Goshen Community Sch. Corp.*, 161 F. Supp. 2d 930, 943 (N.D. Ind. 2001) (same); *cf. Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 4 n.3 (1993) (graduation did not moot parents' reimbursement claim for the cost of a private interpreter hired to help their son graduate).

express directive that the child "remain in the interim alternative educational setting" until the hearing officer issues her decision, 20 U.S.C. § 1415(k)(4).   School Br. 19–20.

That position fails to read the statutory text as a whole. *First*, Section 1415(k)(1)(G) explicitly limits a school's authority to "remove a student to an interim alternative educational setting for *not more than* 45 school days." (emphasis added).   If a school could wait until the 45th day to request a hearing, it could exclude a child for up to 75 days, in direct contravention of the "no more than 45 school days" mandate, *id*.   *See* 20 U.S.C. § 1415(k)(4)(A).

*Second,* Section 1415(k)(3)(B)(ii)(II) imposes a parallel limitation, allowing hearing officers only to "order a change in placement of a child with a disability to an appropriate interim alternative educational setting for *not more than 45 school days*." (emphasis added).   The challenged regulation reads the statutory provisions together, consistent with the IDEA's expedited 30-day hearing schedule.   *See Olu-Cole*, 292 F. Supp. 3d at 419 n.2 (noting that Section 1415(k)(4) "contemplates a decision within 30 school days, well within the 45 days provided by [§ 1415(k)(1)(G)]").

\* \* \* \* \*

Because the district court materially erred in its legal analysis of the stay-put motion and because the consequences of that decision have continuing consequences for M.K.'s claim for compensatory education, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*