# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 24, 2023        Decided August 15, 2023

No. 21-7134

ANNE DAVIS, ON BEHALF OF BRAEDEN DAVIS,
APPELLANT

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02884)

———

*Diana M. Savit* argued the cause for appellant. With her on the briefs was *Charles Moran*.

*Craig E. Leen* was on the brief for *amici curiae* Advocates for Justice and Education, Inc. (The DC Parent Training and Information Center) and Council of Parent Attorneys & Advocates (COPAA) in support of appellant.

*Sonya L. Lebsack*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Karl A. Racine*, Attorney General, at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal

Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General.

Before: CHILDS and PAN, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: Anne Davis, acting on behalf of her son, Braeden Davis, a student who qualifies for special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, appeals an order of the district court denying her motions for a temporary restraining order and a preliminary injunction pursuant to the IDEA's "stay-put" provision, *id.* § 1415(j). The stay-put provision provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree," a student "shall remain" in the student's "then-current educational placement." *Id.*

In 2021, the residential treatment center where Braeden received special educational services unilaterally discharged him. Since then, the District of Columbia (District) has been unable to locate a new residential placement, leaving Braeden without the educational services to which he is entitled. The District has offered Braeden in-home or virtual special education services until it identifies a new residential treatment center available to admit him.

Ms. Davis argued that the District's interim services proposal violates its statutory obligation to maintain Braeden's educational placement because in-home and virtual services do not provide Braeden an alternative therapeutic residential environment "as close[ly] as possible" to a residential facility.

Davis Br. 30, 47, 53. The district court determined that the stay-put provision does not apply in these unique circumstances and declined to enter an injunction against the District. We affirm.

**I.**

The primary substantive guarantee of the IDEA is a "free appropriate public education" (FAPE) to all students with disabilities. 20 U.S.C. § 1412(a)(1)(A). The particulars of a student's special education program are devised by school officials in collaboration with parents and set forth in an "Individualized Education Program" (IEP), *id.* § 1414(d), which "serves as the 'primary vehicle' for providing each [student] with the promised FAPE," *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

When an IEP is developed, the school district must provide the student with an "educational placement" capable of implementing that program. The statute provides that an appropriate placement is the student's "[l]east restrictive environment" — that is, the environment in which the student can be educated to "the maximum extent appropriate" with others who are not disabled. 20 U.S.C. § 1412(a)(5)(A); *see also Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 522–23 (D.C. Cir. 2019) (identifying integration as "[o]ne of the statute's key goals").

In addition to a student's substantive right to a FAPE, the IDEA provides certain procedural guarantees when disagreements over a student's educational placement arise. Disputes typically fall within one of three categories: the school proposes a change in a student's IEP that the student's parents believe fails to offer a FAPE, the school is attempting

to expel a student for disciplinary reasons, or, as alleged in this case, the school and the parents agree on the content of a student's IEP, but the school fails to implement the IEP as written. Parents may request an impartial administrative due process hearing when such disputes arise, 20 U.S.C. § 1415(b)(6), (f)(1), and any party aggrieved by the hearing officer's decision may seek judicial review, *id.* § 1415(i)(2)(A); *see also Olu-Cole*, 930 F.3d at 523–24 (describing the IDEA's administrative dispute resolution process).

Central to this appeal is the IDEA's requirement that a student "shall remain in [the student's] then-current educational placement" until the dispute resolution process concludes. 20 U.S.C. § 1415(j) (entitled "Maintenance of current educational placement"). While a FAPE claim centers on whether the school district has fulfilled its substantive obligation to provide an appropriate and individualized education to a student, Congress designed the stay-put provision with a limited operation and purpose: to prevent schools from unilaterally changing a student's educational placement while parents seek review and to ensure an uninterrupted continuity of education for disabled students pending administrative resolution. *Olu-Cole,* 930 F.3d at 523–24.

A parent is entitled to stay-put relief under § 1415(j) "upon a two-factor showing that (i) an administrative due process proceeding is pending, and (ii) the local educational agency is attempting to alter the student's then-current educational placement." *Olu-Cole*, 930 F.3d at 527 (internal quotation marks and alterations omitted); *see also Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984) (holding that an educational placement has not "change[d]" unless a "fundamental change in, or elimination of, a basic element" of the student's educational program has occurred).

If the two preconditions are met, the stay-put provision functions as an automatic statutory injunction, meaning parents need not meet the traditional four-part test for obtaining preliminary injunctive relief. *Olu-Cole*, 930 F.3d at 528; *Andersen ex rel. Andersen v. District of Columbia*, 877 F.2d 1018, 1023–24 (D.C. Cir. 1989) ("If the [stay-put] provision applies, injunctive relief is available without the traditional showing of irreparable harm.").

## II.

Braeden Davis is a 23-year-old student with multiple disabilities, including autism spectrum disorder.[1] Braeden has a history of aggression toward others, self-injury, and property destruction, and he is easily triggered by a wide range of environmental sensory stimuli. Because of Braeden's disabilities, he is eligible for special education services under the IDEA.

Braeden's most recent IEP, issued in March 2021, identifies his "least restrictive environment" as a residential treatment center and specifies the IEP services he is entitled to receive. Given the severity of his disabilities, Braeden is "unable to attend school with general education peers" and requires instruction in a "highly structured educational and

---

[1] Braeden is above the age of majority, but the District and the D.C. Office of the State Superintendent of Education (OSSE) recognize Braeden as eligible for special education and associated services under the IDEA until at least 2024 as a result of related litigation not at issue here. Braeden was a "child" for purposes of the IDEA at the time this lawsuit was filed. *See* 20 U.S.C. § 1412(a)(1)(A) (covering "children" between ages three and twenty-one); 5-E D.C.M.R. § 3002.1(a) (covering "children" between ages three and twenty-two).

residential environment, with [one-to-one] supervision and a highly structured behavioral intervention program." March 2021 IEP at 27, J.A. 34. Braeden's IEP entitles him to the assistance of a dedicated aide for eight hours per day, specialized instruction for twenty-two-and-a-half hours per week, speech and language therapy for six hours per month, and occupational therapy and behavioral support services, each for twelve hours per month. *See id.* at 26, J.A. 33.

Beginning in August 2020, Braeden received his IDEA services at the Community Services for Autistic Adults and Children, a private residential treatment center in Maryland, and its affiliated school, the Community School of Maryland (together, CSAAC). On October 1, 2021, without input from Ms. Davis or the District, CSAAC notified the District that it planned to discharge Braeden at the end of that month because CSAAC was "no longer the appropriate placement for Braeden." Letter of October 1, 2021 from Scott Murtha, Director of Education of the Community School of Maryland, J.A. 91. CSAAC declined to reconsider its decision or to extend Braeden's residency to allow the District additional time to find a new placement. *See* Decl. of Katie Reda ¶ 33 (Nov. 8, 2021), J.A. 176–77.

After receiving CSAAC's discharge notice, Braeden's IEP team did not consider changing his IEP or whether such a change was appropriate. *See* Decl. of Nicholas Weiler ¶ 14 (Nov. 10, 2021), J.A. 183. Ms. Davis and the District agreed that it should continue to implement Braeden's IEP in his least restrictive environment, which is a residential treatment center. *See* Compl. ¶ 10, J.A. 118–19. The District began searching for a new residential placement and ultimately referred Braeden to nineteen alternative residential facilities. None accepted Braeden's application because they either lacked capacity, did not accept out-of-state referrals, were unable to

meet Braeden's needs, or could not receive the District's referral due to Braeden's age. *See* Reda Decl. ¶¶ 13–32, J.A. 174–76.

With a dwindling list of prospects, locating a new residential facility before CSAAC discharged Braeden appeared unlikely. As a backstop, the District authorized funding for Braeden to receive his IEP services at home through independent providers until a new placement is found.[2] The District also offered Braeden the option to receive his instruction virtually with the assistance of a virtual support aide in a "Communication Education and Support" classroom at Woodrow Wilson High School as an alternative to in-home services. Weiler Decl. ¶ 14, J.A. 183.

Three days before Braeden's expected discharge, Ms. Davis initiated administrative due process proceedings with OSSE, claiming that the District "refused to arrange for a safe and appropriate living arrangement or behavioral support comparable to those required by Braeden's then-current IEP." Admin. Compl. at 7, J.A. 104. Ms. Davis requested a stay-put injunction ordering the school district to keep Braeden "in a safe and appropriate location" and provide his IEP services while a new residential placement was sought. Alternatively, Ms. Davis requested that the school district be ordered to "create an environment capable of implementing Braeden's IEP." *Id.* at 10, J.A. 107.

---

[2] Shortly after issuing the initial interim services plan, the District amended its proposal to allow funding for an additional dedicated aide for eight hours per day during the school week. With that adjustment, the revised interim services plan authorized all of the services provided for in Braeden's March 2021 IEP. *See* Weiler Decl. ¶ 15, J.A. 183.

On November 1, 2021, CSAAC discharged Braeden. Because no residential facility had accepted his application, Braeden was released to his parents and lost access to his special education program.

Ms. Davis immediately filed a complaint on behalf of Braeden against the District in the U.S. District Court for the District of Columbia. Ms. Davis alleged that the District's interim services plan was insufficient, primarily because the District did not provide Braeden a "therapeutic residence" outside Ms. Davis's home or behavioral support sufficient to allow him to make progress on his IEP goals. Compl. ¶¶ 34–44, J.A. 123–24; *see also* Davis Br. 15–17.

Like the administrative complaint, the federal complaint alleged that the District failed to provide "reasonably comparable" interim services and thereby violated its statutory obligation to provide Braeden a FAPE as required by § 1412(a)(1)(A). Compl. ¶¶ 1, 35, 44, J.A. 117, 123, 124. Ms. Davis then moved for a temporary restraining order and a preliminary injunction pursuant to the IDEA's stay-put mandate, § 1415(j). The substantively identical motions sought an order requiring the District to "maintain Braeden's then-current educational placement" at a residential facility or to provide "truly comparable" interim services. Mot. Prelim. Inj. 12–13, ECF No. 7; Mot. TRO 12–13, ECF No. 6.[3]

---

[3] On November 10, 2021, the OSSE hearing officer concluded that Braeden's discharge from CSAAC was a "fundamental change in placement," Hearing Officer Determination (HOD) at 4 (Nov. 10, 2021), J.A. 187, but denied Ms. Davis's request for a stay-put injunction because Braeden's placement was "functionally unavailable due to the unilateral decision of CSAAC," *id.* at 6, J.A. 189 (citing

The district court denied Ms. Davis's motions for stay-put relief.  The district court determined that § 1415(j) did not apply because Braeden's residential placement became unavailable due to circumstances outside of the District's control, the District engaged in a "thorough and ongoing search" for a new residential placement, and the District otherwise made all of Braeden's IEP services available to him at home.  J.A. 230.  Ms. Davis appeals.

**III.**

This court reviews the denial of a temporary restraining order and a preliminary injunction for abuse of discretion, but it reviews de novo a district court's interpretation of the IDEA. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009).

On appeal, Ms. Davis maintains that, when a student's placement becomes unavailable, the IDEA's stay-put provision imposes an affirmative obligation on the District to replicate a student's then-current educational placement "as close[ly] as possible." Davis Br. 30, 47, 53.  Ms. Davis acknowledges that the District began searching for a new residential placement soon after CSAAC announced its plan to discharge Braeden, and that the District issued referrals to nineteen potential residential treatment centers.  But she believes that the District fell short of its statutory duty to maintain Braeden's residential placement because it did not provide Braeden interim housing or continuous behavioral support.

*Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 302 (4th Cir. 2003)).

**A.**

Before addressing whether the relief sought is available to Ms. Davis under § 1415(j), we must determine whether the stay-put provision is implicated at all in this case. We hold it is not.

The stay-put mandate does not apply because *the District* did not effectuate a "fundamental change" in Braeden's educational placement by attempting to "alter" or "undo" the services to which he is entitled under his IEP. *See Olu-Cole*, 930 F.3d at 527; *see also Knight ex rel. Knight v. District of Columbia*, 877 F.2d 1025, 1026–27 (D.C. Cir. 1989) (school district initiated a student's change in placement by proposing to enroll him in a public school instead of the private school he previously attended); *McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985) (school district triggered the stay-put mandate when it sought to transfer a student from a private day school to a public high school). [4]

---

[4] The term "educational placement" is varied in its interpretation across circuits. *See also Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 548 (7th Cir. 1996) (observing that the term "falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP"); *see also Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020) (defining "educational placement" as "the general type of educational program in which the child is placed," *i.e.*, "the classes, individualized attention, and additional services a child will receive"). Here, we need not determine whether Braeden's discharge from CSAAC was a fundamental change in his educational placement because the discharge was not within the District's control.

Here, both parties agree that Braeden's IEP entitles him to receive education at a residential treatment center. Ms. Davis acknowledges that neither CSAAC's decision to end Braeden's residency nor the lack of available openings at the nineteen potential replacement facilities the District identified was attributable to any action taken by the District. And the district court found that the District has "indisputably engaged in a thorough and ongoing search for an appropriate placement." J.A. 226. Indeed, in seeking to place Braeden at a new residential facility, the District sought to implement Braeden's IEP as written by *maintaining* his then-current placement, even though its efforts were ultimately futile. Although Braeden was removed from his least restrictive environment when CSAAC discharged him, based on the facts of this case, we hold that the stay-put provision is inapplicable because the residential component of Braeden's IEP became unavailable for reasons outside of the District's control.[5]

At least four circuits have concluded that the stay-put provision does not apply when a student's educational experience changes due to circumstances beyond the school district's control. *See Weil v. Bd. of Elementary & Secondary Educ.*, 931 F.2d 1069, 1073 (5th Cir. 1991) (holding that the stay-put provision did not apply when a student's educational

---

[5] In her reply brief, and without elaborating on or providing any evidence in support of her claim, Ms. Davis contends for the first time on appeal that the District's ongoing good faith efforts to locate a different facility since Braeden's initial nineteen referrals were rejected are "questionable and disputed." Davis Reply Br. 11 n.5. Because the issue is not presented in this appeal, we do not reach the question of whether relief is available under the stay-put provision, or any other theory, had the District abandoned all reasonable efforts to seek out a new residential placement for Braeden.

placement unexpectedly changed due to a school closure "beyond the control" of the school district); *see also N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1117 (9th Cir. 2010) (holding that furloughs resulting in fewer school days did not trigger the stay-put provision even though the budget cuts might be the subject of a due process complaint for material failure to implement an IEP); *Tilton ex rel. Richards v. Jefferson Cnty. Bd. of Educ.*, 705 F.2d 800, 805 (6th Cir. 1983) (holding that the stay-put provision did not apply when facility that offered the only year-round treatment program for mentally handicapped children was closed due to budgetary reasons beyond the school district's control); *Wagner*, 335 F.3d at 302 ("[I]t is only the current placement, available or unavailable, that provides a proper object for a 'stay put' injunction."). Although the students' educational programs in those cases became unavailable for different reasons, and the opinions differ in whether to characterize such a loss as a change to the "then-current educational placement," those cases uniformly hold that the stay-put provision is inapplicable where a change is not instigated by the school district.

The limited utility of § 1415(j) also reinforces our decision. A stay-put injunction runs only against the school district because it is intended to shield against a *school district's* unilateral attempt to change a student's placement. *See Sch. Comm. of Town of Burlington. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 371–74 (1985) (Notwithstanding § 1415(j), a parent may change their child's educational placement "at their own financial risk."); *see also Honig*, 484 U.S. at 323 (The purpose of the stay-put provision is "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school."). Notably, entitlement to stay-put relief is not predicated on the provision of a FAPE. *Olu-Cole*, 930 F.3d at 524 ("To put it more simply, 'all handicapped children, regardless of whether

their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'" (quoting *Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 161 (2d Cir. 2004))).  In other words, the IDEA's substantive guarantee is not necessarily realized through the procedural safeguard of § 1415(j).

Ms. Davis's request for stay-put relief rests entirely on the District's failure to materially implement Braeden's IEP due to a lack of similar placements.  *See* Davis Br. 44 (arguing that Ms. Davis's interim proposal "came much closer to [Braeden's] IEP than the District's").  But facility unavailability did not cause Braeden's placement at CSAAC to end, even though the District may ultimately be responsible for failing to provide Braeden a FAPE.  *See, e.g.*, *Weil* 931 F.2d at 1073 (holding that placement unavailability does not trigger the stay-put provision).

**B.**

Even if § 1415(j) applies, Ms. Davis's requested relief is beyond the District's responsibility under that provision.

*Knight* does not lend support to Ms. Davis's broad assertion that § 1415(j) automatically entitles Braeden to an interim placement in an alternative setting that comes "as close as possible" to a residential treatment center.  Davis Br. 47.  In *Knight*, because the District did not raise the issue on appeal, this court assumed without deciding that a change in placement sufficient to trigger the stay-put provision occurred when a student's private school placement became unavailable.  877 F.2d at 1028–29.  The school district nevertheless met its stay-put obligation by offering the student a "similar" public school

placement.  *Id.  Knight* made clear that a placement is "similar" if it can fully implement a student's IEP.  *Id.* at 1029.

Here, Ms. Davis and the District agree that residential services are a necessary component of Braeden's IEP and that no "similar" placement is available to him.  In other words, Ms. Davis's proposed relief—a safe alternative living environment with continuous behavioral support—would not provide the "highly structured educational and residential environment" that Braeden's IEP requires.  March 2021 IEP at 27, J.A. 34.  A placement that "comes close" to implementing a student's IEP is not "similar" under the standard defined in *Knight*.  To allow the stay-put relief Ms. Davis seeks would be a substantial extension of our holding in *Knight* because it would require the District to provide a new placement that implements an IEP "as closely as possible" when a "similar" placement is not available.

Any right to such relief must be grounded in the IDEA.  The plain language of § 1415(j) does not expressly contemplate that a placement might become unavailable while administrative proceedings are pending.  *See* 20 U.S.C. § 1415(j) (a student "shall remain" in their "then-current educational placement").  However, because a student cannot "remain" in an unavailable placement, placement availability is reasonably implied.  Ms. Davis urges this court to reject this common-sense reading because Congress did not intend to write an "unavailability exception" into what is otherwise an unequivocal obligation to maintain a student's placement in all circumstances while the dispute resolution process is ongoing.  Davis Br. 43.  We disagree.

Ms. Davis's reading is inconsistent with the stay-put mandate's limited role and operation within the IDEA's overall statutory scheme.  Section 1415(j) is only a shield to

temporarily block the District from fundamentally changing a student's educational placement; it is not a "sword to effectuate affirmative remedies." J.A. 228. The affirmative relief that Ms. Davis desires "goes beyond the 'prohibitory' nature of the statute," *Gross-Lee ex. rel. D.A.-G. v. District of Columbia*, No. 22-cv-1695, 2022 WL 3572457, at *14 (D.D.C. July 20, 2022) (quoting *Wagner*, 335 F.3d at 301), and it is incompatible with the automatic nature of relief available under § 1415(j). A stay-put injunction is solely a tool for maintaining the educational status quo, and ordering the District to provide Braeden a new placement that cannot, by definition, fully implement his IEP would not maintain the status quo. *See Olu-Cole*, 930 F.3d at 523 ("[T]he IDEA's 'stay put' provision strikes the balance heavily in favor of maintaining the educational status quo for students with disabilities until proceedings have concluded."); *see, e.g.*, *Wagner*, 335 F.3d at 301–02.

The stay-put mandate does not, as Ms. Davis contends, "do[] more than ensure educational continuity" by also guaranteeing that the educational placement in place during the dispute resolution process is one that "[a student's] parents helped to develop and with which they agree." Davis Reply Br. 23. By creating a mechanism to block school districts from changing a student's placement until placement disputes are resolved, Congress did not intend to clear a direct path to the district court for parents to challenge how "close" an interim placement comes to an unavailable placement compared to any number of dissimilar alternatives. *See Schaffer ex rel. Shaffer v. Weast*, 546 U.S. 49, 59–60 (2005) ("Congress could have required that a child be given the educational placement that a parent requested during a dispute, but it did no such thing."); *see also Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 534 (2d Cir. 2020) ("To hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services

should be provided.").  Such a holding would transform this procedural safeguard into "a roving and unbounded implement for change" whenever a student's placement becomes unavailable.  District Br. 23; *see also Gross-Lee*, 2022 WL 3572457, at \*14 n.26 ("[F]ederal courts would be busy fielding emergency stay-put motions requesting new placements that would implement portions of an IEP.").  We therefore decline Ms. Davis's invitation to extend the stay-put provision beyond the scope of its plain language and purpose.

Based on the circumstances of this case, we reject Ms. Davis's argument that the District must create an alternative placement that implements a student's IEP "as closely as possible" when a "similar" placement is unavailable.

## C.

Finally, Ms. Davis wrongly assumes that, absent a stay-put injunction, Braeden will be left without a remedy while the District escapes its statutory obligation to provide him a FAPE. As both the administrative hearing officer, HOD at 6 n.2, J.A. 189, and the district court observed, J.A. 229, § 1415(j) allows the parties to agree on a temporary placement.  Alternatively, and outside the parameters of the stay-put provision, Ms. Davis could seek traditional injunctive relief pursuant to the court's authority under 20 U.S.C. § 1415(i)(2)(C)(iii), which broadly authorizes the court to "grant such relief as the court determines is appropriate."  *See, e.g.*, *Wagner*, 335 F.3d at 303 ("The difference between section 1415(j) and section 1415(i)(2)[(C)](iii) is that any preliminary injunction entered under section 1415(i)(2)[(C)](iii) is by no means automatic."); *see also Honig*, 484 U.S. at 327 ("The stay-put provision in no way purports to limit or preempt the [equitable] authority conferred on courts.").

Moreover, if the administrative hearing officer or the district court ultimately find that the District has shirked its statutory duties to provide a FAPE, compensatory education or retroactive reimbursement may be warranted. *See Burlington*, 471 U.S. at 370; *Olu-Cole*, 930 F.3d at 530. But we have no occasion to review the merits of Braeden's FAPE claim at this preliminary stage. That question should be litigated below in the first instance.

\* \* \* \*

To sum up, CSAAC's unilateral decision to discharge Braeden did not trigger the IDEA's stay-put mandate because the District did not refuse to provide a similar available placement. Neither the text of § 1415(j) nor our previous decisions applying the provision impose an affirmative duty on the District to provide an alternative residential environment when a student's then-current placement becomes unavailable for reasons outside the District's control. And Ms. Davis's attempt to bring a substantive challenge on behalf of her son by invoking the stay-put mandate is procedurally improper because § 1415(j) is not intended to afford parties affirmative relief, on the merits, in the form of an automatic injunction.

Accordingly, we affirm the district court's order denying the stay-put injunction.

*So ordered*.